**Willie JEFFERSON, Appellant.**

v.

**DEPARTMENT OF JUSTICE, OFFICE OF PROFESSIONAL RESPONSIBILITY, Appellee.**

**No. 00–5449.**

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 15, 2002.

Decided April 2, 2002.

Brian G. Friel, appointed by the court, argued the cause for amicus curiae on the side of appellant. With him on the briefs was Michael N. Levy.

Willie Jefferson, appearing pro se, was on the brief for appellant.

Vincent H. Cohen, Jr., Assistant U.S. Attorney, argued the cause for appellee. On the brief were Roscoe C. Howard Jr., U.S. Attorney, R. Craig Lawrence and Meredith Manning, Assistant U.S. Attorneys.

Before: HENDERSON, RANDOLPH and ROGERS, Circuit Judges.

Opinion for the Court filed by Circuit Judge ROGERS.

Dissenting opinion filed by Circuit Judge RANDOLPH.

ROGERS, Circuit Judge:

Willie Jefferson appeals the grant of summary judgment to the Justice Department on his request under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552(a) (1996 & West Supp. 2001), for "any and all records created by and/or received by the . . . Office of Professional Responsibility ('OPR') in regards to Assistant United States Attorney ('AUSA') Jeffrey Scott Downing." Previously, this court affirmed the grant of summary judgment insofar as Jefferson did not challenge the district court's segregability determination or the government's reliance on 5 U.S.C. § 552(b)(2) ("Exemption 2") and § 552(b)(5) ("Exemption 5") to redact certain material. *Order*, May 14, 2001. Thus, the only question now before the court is whether the government properly relied on § 552(b)(7)(C) ("Exemption 7(C)") in redacting certain other documents that it released to Jefferson, and in refusing "to confirm or deny the existence of any additional responsive records," the so-called *Glomar* response. *Id.* We hold, on de novo review, that the district court correctly concluded that OPR compiled the files that it released to Jefferson for law enforcement purposes, and that the redacted information in these files falls within Exemption 7(C). However, because OPR was not entitled to make a *Glomar* response as to all of its files in the absence of an evidentiary showing to support that response, we remand the case to the district court to determine whether OPR had non-law enforcement files regarding AUSA Downing as of December 2, 1999, the date of OPR's response to Jefferson's FOIA request. *See Bonner v. Dep't of State,* 928 F.2d 1148, 1152 (D.C.Cir.1991).

## I.

Following his conviction for drug offenses and his sentence to life imprisonment without parole in the Middle District of Florida, Jefferson filed several FOIA requests to obtain records from the OPR. The first FOIA request of August 8, 1995, sought his complete criminal file and was denied under FOIA Exemption 7(A) because his criminal appeal was pending. *See Jefferson v. Reno,* 123 F.Supp.2d 1, 2 (D.D.C.2000). While his FOIA appeal was pending, but after his conviction had been affirmed on direct appeal, the government informed the district court on October 1, 1997, that AUSA Downing, the trial prosecutor, had "purged" the criminal case files. *See id.* at 2–3. While file reconstruction was going on pursuant to the district court's order, Jefferson moved for sanctions against the Justice Department and AUSA Downing. *See id.* at 2–3. In March 2000, the district court referred AUSA Downing to OPR so that it could "investigate whether he violated the law or engaged in professional misconduct." *Id.* at 6. After the Justice Department released additional documents relating to his criminal trial files, *see id.* at 5, and the court conducted a limited *in camera* review of eleven disputed documents, the district court entered a final judgment on August 27, 2001.

Jefferson's FOIA request at issue in the instant appeal followed a period of correspondence between Jefferson and OPR that eventually led to the release of redacted portions of "certain records pertaining to a complaint filed by" Jefferson against AUSA Downing, *see id.* at 5, but not such other files as OPR may have regarding AUSA Downing. After filing his first FOIA request on August 8, 1995, Jefferson wrote a letter to OPR in October 1995, charging AUSA Downing with prosecutorial misconduct before the Grand Jury and alleging the deliberate withholding and concealing of exculpatory evidence and the presentation of perjured and manufactured evidence at his trial. Jefferson further alleged that AUSA Downing had conspired with a confidential informant to give false testimony at trial and had violated Fed. R.Crim.P. 48(a). OPR responded that it found no basis on which action by OPR would be warranted. After Jefferson wrote two additional letters, again alleging prosecutorial misconduct, OPR advised Jefferson that the proper forum for his complaint was the court and that OPR found no allegation upon which action by OPR would be warranted. Jefferson responded by letter of August 2, 1996, that: "In order for me to document your office's assistance in this matter would you please forward to me a copy of the investigative report your office completed."

On September 15, 1998, Jefferson filed another complaint with OPR, captioned "RE: 'Request for the initiation of criminal charges against [AUSA] Downing,'" alleging violations of Title 18 of the United States Code for obstruction of justice and deprivation of constitutional rights, as well as a privacy claim under Title 28 of the Code of Federal Regulations for giving unauthorized access to his criminal file for the purpose of destroying those records. OPR responded that it found no basis for any action based on Jefferson's allegations.

Jefferson, responding to OPR's statement that it would further review the matter if he could supply more details, submitted two declarations and repeated his allegations that his criminal trial records were "improperly accessed and destroyed" by AUSA Downing. OPR advised Jefferson on May 3, 1999, that it found no allegation of misconduct on which OPR action would be warranted.

Jefferson filed the FOIA request at issue on August 3, 1999, prior to the time the district court referred AUSA Downing for an investigation by OPR. This time Jefferson sought "copies of any and all records created and/or received by ... [OPR] ... in regards to" AUSA Downing, and "an index of any files maintained by OPR in regards to" AUSA Downing. The OPR responded by letter of December 2, 1999, that "[i]t is the policy of this Office when responding to FOIA requests from third-party individuals to refuse to confirm or deny the existence of records concerning Department of Justice employees," absent their consent or "an overriding public interest," citing FOIA Exemption 7(C). Nevertheless, OPR stated that it had identified 28 documents responsive to Jefferson's request "pertaining to a complaint filed by you," and released eleven in their entirety and seventeen in part. OPR withheld the remaining information pursuant to FOIA Exemptions 2, 5, and 7(C).

Following denial of his administrative appeal, Jefferson filed suit challenging OPR's FOIA determination. The government moved for summary judgment and submitted a declaration by Dale K. Hall, an OPR employee and FOIA specialist, stating that "[a]ll records relating to OPR's investigations are compiled for law enforcement purposes and, therefore, are deemed to be law enforcement files" within Exemption 7(C). In addition, Hall stated that "all nonexempt information contained

in the 17 [redacted] documents was reasonably segregated for release" to Jefferson, and that pursuant to Exemption 7(C), "OPR [w]ould neither confirm nor deny any other records that may or may not exist" on AUSA Downing. The district court granted the government's motion for summary judgment. The court ruled that because OPR's investigation related to allegations of criminal misconduct, the records were prepared for law enforcement purposes within the meaning of Exemption 7(C). The court also ruled that Jefferson had failed to show that OPR was engaged in illegal activity, thereby confirming the appropriateness of the redactions in the released materials. The court rejected Jefferson's challenge to OPR's claim that all segregable portions of the records had been disclosed. Of particular significance, the district court further ruled that OPR's *Glomar* response refusing to confirm or deny whether it possessed any other files on AUSA Downing was proper because such records would not shed light on the agency's conduct and Jefferson "seeks information in law enforcement files related to an individual who has not waived his rights to privacy with respect to any such records."

## II.

On appeal, Jefferson, assisted by amicus, contends that the district court erred as a matter of law in allowing the government to make a *Glomar* response with respect to any other files that OPR may possess on AUSA Downing. Because OPR conducts both law enforcement and non-law enforcement activities, and Jefferson's FOIA request asked for "all records" relating to AUSA Downing and not simply those compiled for law enforcement purposes, Jefferson maintains that OPR had to identify the records at issue and establish with particularity that they were compiled for law enforcement purposes. Alternatively, Jefferson contends that even if OPR could properly issue a *Glomar* response under Exemption 7(C) in some circumstances, there was no evidence showing that all of OPR's files relating to AUSA Downing were compiled for law enforcement purposes. Jefferson also contends that the district court erred in failing both to review whether the 17 redacted documents were compiled for law enforcement purposes, and to determine the segregability of the non-law enforcement documents. Finally, Jefferson contends that the district court erred in finding that AUSA Downing's privacy interest outweighed the public interest in disclosure of the records even if they were compiled for law enforcement purposes.

■ Our review of the grant of summary judgment is *de novo. Tao v. Freeh*, 27 F.3d 635, 638 (D.C.Cir.1994). The court must "determine, from inspection of the agency affidavits submitted, whether the agency's explanation was full and specific enough to afford the FOIA requester a meaningful opportunity to contest, and the district court an adequate foundation to review, the soundness of the withholding." *King v. Dep't of Justice*, 830 F.2d 210, 217–18 (D.C.Cir.1987).

■ Under FOIA Exemption 7(C), the requirement that "each agency shall make available to the public information" does not apply to matters that are:

> records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy.

5 U.S.C. § 552(b)(7)(C). In assessing whether records are compiled for law enforcement purposes, this circuit has long emphasized that the focus is on how and

under what circumstances the requested files were compiled, *see Weisberg v. United States Dep't of Justice,* 489 F.2d 1195, 1202 (D.C.Cir.1973), and "whether the files sought relate to anything that can fairly be characterized as an enforcement proceeding." *Aspin v. Dep't of Defense,* 491 F.2d 24, 27 (D.C.Cir.1973). In *Rural Housing Alliance v. Dep't of Agriculture,* 498 F.2d 73 (D.C.Cir.1974), the court identified two types of investigatory files that government agencies compile: (1) files in connection with government oversight of the performance of duties by its employees, and (2) files in connection with investigations that focus directly on specific alleged illegal acts which could result in civil or criminal sanctions. *Id.* at 81. Again, the court emphasized that the purpose of the investigatory files "is the critical factor." *Id.* at 82. Thus, if the investigation is for a possible violation of law, then the inquiry is for law enforcement purposes, as distinct from customary surveillance of the performance of duties by government employees. *Id.* Then, in *Pratt v. Webster,* 673 F.2d 408 (D.C.Cir.1982), the court set forth a two-part test whereby the government can show that its records are law enforcement records: the investigatory activity that gave rise to the documents is "related to the enforcement of federal laws," and there is a rational nexus between the investigation at issue and the agency's law enforcement duties. *Id.* at 420, 421. The court again distinguished the need "to establish that the agency acted within its principal function of law enforcement, rather than merely engaging in a general monitoring of private individuals' activities." *Id.* at 420.

The court applied these principles in *Kimberlin v. Dep't of Justice,* 139 F.3d 944 (D.C.Cir.1998). In that case, the requester asked for "all papers, documents and things pertaining to the OPR investigation" of another AUSA. *Id.* at 947.

Applying the distinction between law enforcement records and internal agency investigations set forth in *Rural Housing,* 498 F.2d at 81, the court stated that "[m]aterial compiled in the course of ... internal agency monitoring does not come within Exemption 7(C) even though it 'might reveal evidence that later could give rise to a law enforcement investigation.'" *Kimberlin,* 139 F.3d at 947. Concluding, however, that "the OPR investigation here at issue was conducted in response to and focused upon a specific, potentially illegal release of information by a particular, identified official," *id.* at 947, the court held that the information in the OPR files was compiled for law enforcement purposes. *Id.*

Consistent with the plain language of his FOIA request of August 3, 1999, Jefferson states in his *pro se* brief that he sought any and all records maintained by OPR pertaining to AUSA Downing "after OPR continued to refuse to investigate AUSA Downing in light of the overwhelming evidence demonstrating that an investigation of AUSA Downing was warranted." As the Justice Department sees it, Jefferson is concerned with OPR's failure to conduct an investigation based on allegations that could lead to civil or criminal sanctions, and is not seeking records maintained in the course of general oversight of government employees. *See* Appellee's Br. at 14. If so, then it would appear that the district court properly ruled that the OPR files requested by Jefferson satisfied Exemption 7(C)'s threshold requirement. However, Jefferson points out in his *pro se* brief that his request extends to records that OPR maintains as "an internal affairs unit acting as [an] employer simply supervising its employees."

■ The Justice Department regulations provide, in relevant part, that OPR

"shall ... [r]eceive and review any information or allegation concerning conduct by a Department employee that may be in violation of law, regulations or orders, or of applicable standards of conduct...." 28 C.F.R. § 0.39a(a) (2001). In addition, OPR is required to:

Refer any matter that appears to warrant examination in the following manner:

(1) If the matter appears to involve a violation of law, to the head of the investigative agency having jurisdiction to investigate such violations;

(2) If the matter appears not to involve a violation of law, to the head of the office, division, bureau or board to which the employee is assigned, or to the head of its internal inspection unit....

*Id.* § 0.39a(d). Among the information that OPR may receive are "[r]eports containing the findings of any investigation undertaken upon matters [that appear not to involve a violation of law] ... and the administrative sanction to be imposed, if any sanction is warranted." *Id.* § 0.39a(e). Consistent with the distinction drawn in *Pratt*, 673 F.2d at 419–21, and *Rural Housing*, 498 F.2d at 81, the regulations contemplate that OPR may secure reports, as distinct from compiling them, that arise as a result of internal agency monitoring and review allegations of non-law violations by Department attorneys for internal disciplinary purposes. OPR's internal guidelines reflect a similar distinction, providing that "OPR reviews allegations of attorney misconduct involving violations of any standard imposed by law, applicable rules or professional conduct, or Departmental policy." *www.usdoj.gov/opr/index.html* (last visited March 27, 2002). Thus, as in *Kimberlin*, 139 F.3d at 947, and *Beck*, 997 F.2d at 1492, we decline to hold as a matter of law that all OPR records are necessarily law enforcement records.

Because the Department had the burden, under the two-part test of *Pratt*, 673 F.2d at 420–21; *see also United States Dep't of State v. Ray*, 502 U.S. 164, 173, 112 S.Ct. 541, 546–47, 116 L.Ed.2d 526 (1991), to establish as a threshold matter that its records are law enforcement records, the district court had to determine whether all of OPR's records relating to AUSA Downing were law enforcement records before turning to a consideration of whether the public interest in disclosure of any law enforcement records was outweighed by AUSA Downing's privacy interests. *See* 5 U.S.C. § 552(b)(7)(C). The district court relied on Hall's declaration that "[a]ll records relating to OPR's investigations are compiled for law enforcement purposes, and, therefore, are deemed to be law enforcement files." That may well be true, for this court has recognized that Exemption 7(C) "covers investigatory files related to enforcement of all kinds of laws," including those involving "adjudicative proceedings." *Rural Housing*, 498 F.2d at 81 n. 46. Depending on the purpose of the investigation, records obtained by OPR regarding ethical violations by AUSA Downing of the Attorney General's Code of Conduct, *see* 28 C.F.R. § 77.1–5; 28 U.S.C. § 530B, may be investigatory law enforcement files under *Rural Housing*, 498 F.2d at 82. *Cf. Griva v. Davison*, 637 A.2d 830, 846–47 (D.C.1994); *Waldman v. Levine*, 544 A.2d 683, 686 (D.C. 1988). But as the case giving rise to "the *Glomar* response" itself makes clear, the Department cannot rely on a bare assertion to justify invocation of an exemption from disclosure, *see Phillippi v. CIA*, 546 F.2d 1009, 1014–15 & n. 12 (D.C.Cir.1976), especially when, as here, the regulations contemplate that OPR will receive as well as generate reports that may constitute investigatory records compiled "in connec-

tion with government oversight of the performance of duties by its employees." *Rural Housing,* 498 F.2d at 81; *id.* at 82 n. 48. Had OPR received reports or allegations regarding non-law violations by AUSA Downing, it is entirely possible that OPR took no action beyond receipt; on the record before the district court, however, the court could not determine whether such records exist. Although the Department submitted a *Vaughn* index in response to Jefferson's first FOIA request, it did not provide the district court with a similar description of all of OPR's files regarding AUSA Downing in response to Jefferson's FOIA request of August 3, 1999. Nor does the record indicate that the district court conducted an in-camera inspection of OPR's files regarding AUSA Downing. Under the circumstances, OPR failed to meet its burden to produce evidence whereby the district court would be in a position to make the required threshold evidentiary determination. *See King,* 830 F.2d at 217–18.

Because Jefferson's August 3, 1999 FOIA request is considerably broader than the FOIA request in *Kimberlin,* 139 F.3d at 947, we agree with amicus that a remand is required. The Department's regulations describe OPR as a mixed function agency with responsibilities that embrace not only investigations of violations of law and breaches of professional standards that may result in civil liability, *see, e.g., Griva v. Davison,* 637 A.2d 830, 846–47 (D.C.1994); *Avianca, Inc. v. Corriea,* 705 F.Supp. 666, 678–79 (D.D.C.1989), but breaches of internal Department guidelines that may lead to disciplinary proceedings, *see Stern v. FBI,* 737 F.2d 84, 90 (D.C.Cir.1984), as a result of the receipt of reports of investigations by other entities of such non-law violations. Hence, a *Glomar* response was inappropriate in the absence of an evidentiary record produced by OPR to support a finding that all OPR

records regarding AUSA Downing are law enforcement records. Unlike cases on which the government relies, such as *Dunkelberger v. Dep't of Justice,* 906 F.2d 779, 780 (D.C.Cir.1990), where the law enforcement purpose of the agency's documents was conceded, or *Kimberlin,* 139 F.3d at 947–48, where the FOIA request was directed only to OPR's investigation, Jefferson's FOIA request seeks all records that OPR may have regarding AUSA Downing. His position that not all OPR records are necessarily law enforcement records appears to be supported by the Justice Department's regulations.

On remand, therefore, the Department, to meet its burden to claim exemption from the obligation to disclose the requested records, must provide a *Vaughn* index, or in-camera inspection, or other evidence that would enable the district court to determine whether all OPR records relating to AUSA Downing are law enforcement records under Exemption 7(C). If the court finds there are non-law enforcement records in OPR, they must be released unless Exemption 2 or 5 applies; the government's invocation on appeal of Exemption 6 comes too late. *See Maydak v. United States Dep't of Justice,* 218 F.3d 760, 764 (D.C.Cir.2000). On the other hand, if the district court finds on remand that all of OPR's records regarding AUSA Downing are law enforcement records, we hold, consistent with the Order of May 14, 2001, that Jefferson's challenge to the district court's weighing of the public and private interests under Exemption 7(C) fails.

■ The district court balanced the privacy interests in the manner instructed by, and with a result virtually compelled by, *Kimberlin,* 139 F.3d at 948. Other binding precedent in this circuit is to the same effect. *See, e.g., Nation Magazine v. U.S.*

*Customs Service,* 71 F.3d 885, 894 & n. 8 (D.C.Cir.1995); *Beck,* 997 F.2d at 1493, 1494; *Rural Housing,* 498 F.2d at 82. Even assuming, as the court did in *Kimberlin,* 139 F.3d at 949, "that the balance of interests relating to the disclosure of material in an OPR file will not so often tip toward withholding that a categorical rule against disclosure is appropriate," Jefferson fails to show that access to OPR's law enforcement files on AUSA Downing "is necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal activity." *SafeCard Services, Inc. v. SEC,* 926 F.2d 1197, 1206 (D.C.Cir.1991). A news clipping submitted by Jefferson stating that OPR is inundated with federal prisoner complaints and agrees with a judge's criticism of an attorney only about half of the time does not, as the district court correctly found, suffice to raise a claim of illegal agency activity; the clipping reports quantity and does not suggest a predilection to ignore such complaints. Nothing in the district court's referral of AUSA Downing to OPR for the file destruction mandated a finding of agency misconduct.

Amicus' reliance on *Stern v. FBI,* 737 F.2d 84 (D.C.Cir.1984), is misplaced. Although in *Stern* the court acknowledged the public interest in knowing that a government investigation was comprehensive or that disciplinary measures were adequate, *id.* at 92, the court nevertheless declined to release the names of lower level employees, recognizing that, unlike Exemption 6, the balance is not tilted emphatically in favor of disclosure under Exemption 7(C). *Id.* at 91–92. In *Beck,* 997 F.2d at 1493, moreover, the court indicated the limits of *Stern:* not only did *Stern* involve a well-publicized scandal that the FBI had conducted widespread, illegal surveillance of political activists through surreptitious entries and wiretappings and then covered up its activities, the disclo-

sure ordered by the court was limited to the name of a high-level FBI official who knowingly participated in the cover-up. *Stern,* 737 F.2d at 86, 93. AUSA Downing is not a high official in the United States Attorney's Office, *see Kimberlin,* 139 F.3d at 949, and the public's knowledge of AUSA Downing with regard to his prosecution of Jefferson is hardly comparable to the scandal in *Stern* or even to the public's knowledge of the OPR investigation in *Kimberlin.* Yet in *Kimberlin,* which involved a politically charged investigation of a sitting Vice President, the court held that the AUSA's privacy interests outweighed the public interest in releasing the contents of the OPR investigation of the AUSA, notwithstanding the AUSA's own public disclosure of the existence of the investigation. *Cf. United States Dep't of Justice v. Reporters Committee for Freedom of the Press,* 489 U.S. 749, 773–74, 109 S.Ct. 1468, 1481–82, 103 L.Ed.2d 774 (1989).

■ Finally, amicus' contention that the district court erred in upholding OPR's redactions of the documents that it disclosed under Exemption 7(C), because the court had no basis on which to determine whether the redacted material was compiled for law enforcement purposes, is meritless. *Cf. Kimberlin,* 139 F.3d at 947. The documents that were released by OPR "pertain[ed] to a complaint" of illegal activity by Jefferson against AUSA Downing. Jefferson's written complaints involved allegations of criminal wrongdoing by AUSA Downing. Jefferson did not challenge the district court's segregability determination, nor OPR's redactions pursuant to FOIA Exemptions 2 and 5. By amicus' own admission, OPR only withheld pursuant to Exemption 7(C) the names and identifying information of Justice Department employees and third parties, in order to protect their privacy. *See Amicus Br.*

at 25. Hence, amicus, at most, presents speculative or vague assertions that redacted information was improperly withheld. *See Carter,* 830 F.2d at 392.

Accordingly, we remand the case for the district court to determine, upon evidence the government shall present, that any additional records sought by Jefferson's August 3, 1999, FOIA request are law enforcement records properly withheld under Exemption 7(C); we otherwise affirm the grant of summary judgment.

RANDOLPH, Circuit Judge, dissenting:

I believe all of the files of the Office of Professional Responsibility (OPR) in the Department of Justice relating to the investigation of an individual are "compiled for law enforcement purposes" within the meaning of exemption 7(C) of the Freedom of Information Act, 5 U.S.C. § 552(b)(7)(C). OPR therefore properly refused to confirm or deny the existence of other investigations of Assistant United States Attorney Downing.

Exemption 7(C) shields law enforcement files from disclosure when release of the records would constitute "an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). So-called "Glomar" responses, named after the ship involved in *Phillippi v. CIA,* 546 F.2d 1009 (D.C.Cir. 1976), are permissible answers to FOIA requests if the agency's acknowledgment that it has investigatory files about an individual would constitute an unwarranted invasion of the individual's privacy. If Jefferson sought law enforcement files, our decision in *Beck v. Dep't of Justice,* 997 F.2d 1489 (D.C.Cir.1993), justified OPR's Glomar response, a point about which we all agree.

We may also agree that "[i]nternal agency investigations ... in which an agency, acting as the employer, simply supervises its own employees" are not law enforce-

ment investigations. *Stern v. FBI,* 737 F.2d 84, 89 (D.C.Cir.1984). But ever since its founding by Attorney General Levi in 1975, OPR has lacked general supervisory authority over DOJ attorneys. Its task has always been much narrower. OPR is a reactive agency within the Justice Department, receiving complaints and investigating "allegations of professional misconduct by Department of Justice attorneys that pertain to the exercise of their authority to investigate, litigate or provide legal advice." OFFICE OF PROFESSIONAL RESPONSIBILITY, FISCAL YEAR 1999 ANNUAL REPORT 1, http://www.usdoj.gov/opr/99AR–Final.htm (last visited Mar. 18, 2002).

By regulation, OPR is charged with the duty of investigating the conduct of Justice Department attorneys "that may be in violation of law, regulations or orders, or of applicable standards of conduct or may constitute mismanagement, gross waste of funds, abuse of authority, or a substantial and specific danger to public health or safety." 28 C.F.R. § 0.39a(a) (2002). Recognizing the potential overlap with the investigative authority of the Justice Department's Office of the Inspector General, which "conducts and supervises audits, inspections and investigations relating to the programs and operations of the Department," 28 C.F.R. § 0.29a(a) (2002), the Attorney General has circumscribed OPR's authority. OPR "shall have jurisdiction to investigate allegations of misconduct by Department attorneys that relate to the exercise of their authority to investigate, litigate or provide legal advice." *Jurisdiction for Investigation of Allegations of Misconduct by Department of Justice Employees,* Order No. 1931–94 (Nov. 8, 1994). The Inspector General has exclusive authority to investigate any other allegations.

When OPR receives a complaint, it conducts a preliminary inquiry. 28 C.F.R. § 0.39a(c) (2002). When OPR determines

that the matter warrants further investigation, OPR refers it for investigation:

(1) If the matter appears to involve a violation of law, to the head of the investigative agency having jurisdiction to investigate such violations;

(2) If the matter appears not to involve a violation of law, to the head of the office, division, bureau or board to which the employee is assigned, or to the head of its internal inspection unit;

28 C.F.R. § 0.39a(d)(1) & (2) (2002).

Two points about the quoted subsections need stressing. First, the regulations treat violations of "law" as violations of statutory law and violations of regulations, standards of conduct and so forth as something else. But for FOIA purposes, "law"—as in "compiled for law enforcement purposes"—includes violations of regulations and standards of conduct and court orders and so forth. All of these sources are also law, although they are not legislation.* This is why "[i]nvestigations which focus directly on specific alleged illegal acts, illegal acts of particular identified officials, acts which could, if proved, result in civil or criminal sanctions" are investigations for law enforcement purposes within the meaning of exemption 7(C). *Rural Housing Alliance v. United States Dep't of Agric.*, 498 F.2d 73, 81 & n. 46 (D.C.Cir.1974).

Second, after the employee's office conducts an investigation of his alleged non-statutory violation pursuant to § 0.39a(d)(2), it must file the investigative report with OPR, together with a description of the sanction imposed. It is the possibility that OPR possesses such a (d)(2) report relating to Assistant United States Attorney Downing that leads my colleagues to the conclusion that OPR may possess non-law enforcement files outside exemption 7(C)'s protection. This strikes me as doubly mistaken.

It wrongly assumes that any (d)(2) investigation by the head of the department would be unrelated to a law violation, an assumption that rests on a misreading of the regulations. And it also wrongly assumes that OPR receives the report for other than law enforcement purposes. What other purposes might these be? Surely not as an "employer simply supervising its employees." Maj. op. at 177. To repeat, OPR is not a supervising agency within the Justice Department; and it does not have general oversight responsibility. Instead OPR receives the report of the (d)(2) investigation so that it may decide whether to pursue its law enforcement functions further. "When warranted, OPR conducts full investigations of such allegations, and reports its findings and conclusions to the Attorney General and other appropriate Departmental officials." http://www.usdoj.gov/opr/index.html. That OPR might close the file at this stage, or earlier, does not mean that the records it compiles are for other than law enforcement purposes. Not every complaint will be credible. Not every investigation will conclude that the target engaged in misconduct. And as with any agency conducting law enforcement investigations, not every piece of information in OPR's file will constitute evidence of illegal activity. In the course of investigating someone for committing a crime, the FBI for instance

---

* When a government attorney is found to have engaged in intentional misconduct, OPR notifies the state bar association which has licensed that attorney. *See* GENERAL ACCOUNTING OFFICE, FOLLOW-UP INFORMATION ON THE OPERATIONS OF THE DEPARTMENT OF JUSTICE'S OFFICE OF PROFES-SIONAL RESPONSIBILITY 2 (2001). The ethical rules for lawyers contain enforceable standards and violations carry civil if not criminal sanctions. Also, attorneys who violate court rules can be sanctioned for contempt of court.

might have its agents conduct investigations into the individual's friends and associates, his lifestyle, his spending habits and so forth. None of these inquiries will necessarily reveal criminal activity, but there can be no doubt that the records thus compiled are for law enforcement purposes within exemption 7(C). For these reasons, I would credit the affidavit of the government attorney that "[a]ll records relating to OPR's investigations are compiled for law enforcement purposes and, therefore, are deemed to be law enforcement files." Declaration of Dale K. Hall, at 2. My colleagues label the sworn statement a "bare assertion," maj. op. at 178, which has nothing to do with what should concern us—namely, whether it is true. I am convinced that it is. The majority offers no good reason for disbelieving it.

One should not be misled by the majority's statement that our court has "decline[d] to hold as a matter of law that all OPR records are necessarily law enforcement records." Maj. op. at 178. The most to be said of the cases cited for this proposition—*Kimberlin v. Dep't of Justice,* 139 F.3d 944, 947 (D.C.Cir.1998), and *Beck v. Dep't of Justice,* 997 F.2d 1489, 1492 (D.C.Cir.1993)—is that the court had no occasion to discuss, or to reach, the issue. This is the first case to do so, and I believe the result it reaches is mistaken.

Because OPR conducts law enforcement investigations, and has no other function within the Department of Justice, its records come within exemption 7(C) and a remand is unwarranted. I therefore dissent.