# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued January 12, 2017        Decided August 11, 2017

No. 16-5067

ANGELA CLEMENTE,
APPELLANT

v.

FEDERAL BUREAU OF INVESTIGATION, ET AL.,
APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 1:08-cv-01252)

*James H. Lesar* argued the cause and filed the briefs for appellant.

*Daniel P. Schaefer*, Assistant U.S. Attorney, argued the cause for appellees. With him on the brief was *R. Craig Lawrence*, Assistant U.S. Attorney.

Before: SRINIVASAN and PILLARD, *Circuit Judges*, and EDWARDS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* SRINIVASAN.

SRINIVASAN, *Circuit Judge*: Appellant Angela Clemente, acting under the Freedom of Information Act, sought records from the FBI pertaining to a former informant. Clemente later initiated this FOIA action against the FBI in the district court. Over the course of several years of litigation, the district court granted summary judgment to the FBI on the adequacy of its search for responsive records and its invocation of FOIA's disclosure exemption for law-enforcement records. In addition, the court twice denied Clemente's motions for interim attorney fees. The court eventually dismissed the case after Clemente failed to file objections to the government's latest explanation for withholding information.

Clemente appeals the district court's decisions to grant summary judgment to the FBI, deny her motions for interim attorney fees, and dismiss her remaining claims. Given the limited scope of Clemente's FOIA request, we reject her challenges to the adequacy of the search. We also affirm the district court's remaining decisions. The court correctly found that the records in this case met the threshold for FOIA's law-enforcement exemption, and the court acted within its authority in denying Clemente's motions for interim attorney fees and in dismissing the remainder of the case.

I.

Clemente has spent years researching the activities of Gregory Scarpa, Sr., a high-ranking Mafia member and FBI informant. In furtherance of those efforts, on April 12, 2008, Clemente sent a letter to the Record/Information Dissemination Section of FBI Headquarters, requesting "the entire UNREDACTED FBI file of Gregory Scarpa Sr." Letter from Angela Clemente, Forensic Intelligence Analyst, to the FBI, Record/Info. Dissemination Section (Apr. 12,

2008). On May 21, 2008, she sent another copy of that request to the FBI.

On July 9, 2008, Clemente's attorney sent the FBI a letter stating that he wished to "clarify" her request. Letter from James H. Lesar, Attorney, to David M. Hardy, Section Chief, FBI Record/Info. Dissemination Section (July 9, 2008). The letter stated:

> Initially, we wish to clarify her request in certain respects. First, Ms[.] Clemente's request for the file on Mr. Gregory Scarpa, Sr. is directed to any informant file on Mr. Scarpa, including in particular any Top Echelon ("TE") Informant file. Secondly, Ms. Clemente wishes to limit this request to the first 500 pages which fall within the following three categories.

*Id.* The letter went on to describe those three categories: records pertaining to New Orleans Mafia Chief Carlos Marcello, records about any trip Scarpa made to Costa Rica, and "all records in any informant file in chronological sequence." *Id.* Clemente's attorney also asked to know the number of additional responsive pages beyond the 500-page limit.

Clemente alleges that, on the same day, her lawyer also sent the FBI a second letter requesting information about Scarpa. That letter had a broader scope than the first one. The second letter requested "all records on or pertaining to Gregory Scarpa" and contained detailed instructions to the FBI on how to conduct its search. Second Letter from James H. Lesar, Attorney, to David M. Hardy, Section Chief, FBI Record/Info. Dissemination Section (July 9, 2008).

On July 21, 2008, Clemente brought this suit in district court, seeking to compel the FBI to respond to her request. Neither her original nor her first amended complaint mentioned a second July 9, 2008, letter. On October 10, 2008, David M. Hardy, the Chief of the FBI's Record/Information Dissemination Section, sent a letter confirming that the FBI had received Clemente's clarification (i.e., the first July 9 letter) and had located about 1,170 pages of potentially responsive records. The letter also quoted $107 in duplication costs for those records. On November 21, 2008, after Clemente's lawyer sent the FBI a check for $107, the agency released the first 500 pages from Scarpa's informant file. In March 2009, the FBI sent Clemente an additional 653 pages of responsive records from that file.

Over the next few years, the parties went through three rounds of summary judgment motions. The FBI filed several affidavits—commonly called *Vaughn* indices, *see Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973)—explaining the agency's decision to withhold certain records. The case was originally assigned to Judge Friedman, but, on September 1, 2011, it was transferred to Judge Rothstein. *See* Letter from James H. Lesar, Attorney, to Mark J. Langer, Clerk, U.S. Court of Appeals for the D.C. Circuit 5 (Aug. 24, 2016) (Lesar Letter).

The district court granted summary judgment to the FBI with regard to the adequacy of its search. *See Clemente v. FBI*, 741 F. Supp. 2d 64, 77, 79-80 (D.D.C. 2010). The court also concluded that the FBI satisfied its burden of showing that certain records had been compiled for law enforcement purposes and thus could be withheld from disclosure if the Bureau submitted an appropriate *Vaughn* index explaining why disclosure would cause one of the harms enumerated in 5 U.S.C. § 552(b)(7). *Id.* at 84. In 2013, and again in 2015,

the district court denied Clemente's motions for an interim award of attorney fees. *See Clemente v. FBI*, 166 F. Supp. 3d 11, 14 (D.D.C. 2015), *reconsideration denied*, No. 1:08-cv-1252, 2015 WL 10738604 (D.D.C. Dec. 1, 2015). After Clemente failed to file objections to the FBI's latest *Vaughn* index by a court-imposed deadline, the district court dismissed the case. Clemente appealed to this court and also filed a motion for a final award of attorney fees in the district court.

II.

Before addressing the merits of Clemente's claims, we first consider a challenge to the district court's jurisdiction. The orders on appeal in this case were entered by Judge Rothstein, who sits on the United States District Court for the Western District of Washington but was designated and assigned to the United States District Court for the District of Columbia. Clemente contends that Judge Rothstein lacked the proper designation to hear this case. We disagree.

The Chief Justice of the United States has statutory authority to "designate and assign temporarily a district judge of one circuit for service in another circuit." 28 U.S.C. § 292(d). Another provision gives the Chief Justice the same authority with respect to judges who have assumed senior status. *Id*. § 294(d). On August 23, 2011, pursuant to section 292(d), the Chief Justice designated Judge Rothstein "to perform judicial duties in the United States District Court for the District of Columbia during the period(s) of September 1, 2011 to March 1, 2012 . . . and for such time as needed in advance to prepare and to issue necessary orders, or thereafter as required to complete unfinished business." Lesar Letter at 6. On September 1, 2011, this case was transferred to Judge Rothstein. She also assumed senior status on the same day.

On February 23, 2012, the Chief Justice re-designated Judge Rothstein—this time pursuant to section 294(d) in light of her having assumed senior status—"to perform judicial duties" from March 1, 2012 to September 1, 2012. *Id.* at 7. That designation likewise allowed for "such time . . . thereafter as required to complete unfinished business." *Id.*

Those designations cover Judge Rothstein's actions in this litigation. She took over the case while acting under the first designation. And although that designation provided for her to exercise duties under the assignment until March 1, 2012, it also enabled her to continue her duties for "such time thereafter" as may be "required to complete unfinished business." She therefore could continue working on this case. She assumed senior status during the operative period of the first designation, but we understand that designation to have continued in force notwithstanding her taking senior status. At any rate, in February 2012, she was redesignated under the statutory provision governing senior judges, and this second designation gave her authority to continue working on this case even assuming the first one no longer did so.

This case is unlike two cases Clemente cites, *Wrenn v. District of Columbia*, 808 F.3d 81 (D.C. Cir. 2015), and *Frad v. Kelly*, 302 U.S. 312 (1937). In *Wrenn*, we vacated an order entered by a visiting judge designated to hear certain specified cases because the order was issued in a case beyond the ones identified in the designation. *See* 808 F.3d at 83-84. In contrast, neither of Judge Rothstein's pertinent designations was limited to particular cases. The visiting judge in *Frad v. Kelly* sat by designation for a limited time period. *Frad*, 302 U.S. at 316. The Supreme Court found that the judge had no authority, after his designation expired, to revoke the probation of a defendant he had tried while sitting by designation because the trial had already been "concluded by

the judgment of sentence." *Id.* at 317. The problem in *Frad* was thus the judge's issuing an order in what amounted to a new matter he took on after his designation had ended. Judge Rothstein's actions here, in contrast, were all taken in the same matter, one properly transferred to her during her 2011-12 designation.

### III.

Turning to the merits, we first address Clemente's claims concerning the adequacy of the FBI's search for responsive records. Our review of the district court's grant of summary judgment on that issue is de novo. *See Nation Magazine, Washington Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 889 (D.C. Cir. 1995). We hold that the district court was correct in construing the scope of Clemente's request, and we therefore reject Clemente's challenges to the search.

### A.

We begin our assessment of the FBI's search by "first ascertain[ing] the scope of the request itself." *Id.* Clemente contends that the scope of her FOIA request was broader than the terms laid out in the first July 9, 2008, letter. We are unpersuaded.

The first July 9, 2008, letter by its own terms "clarif[ied] [Clemente's] request in certain respects." Letter from James H. Lesar, Attorney, to David M. Hardy, Section Chief, FBI Record/Info. Dissemination Section (July 9, 2008). Specifically, the letter stated that Clemente's request was directed "to any informant file on Mr. Scarpa, including in particular any Top Echelon ('TE') Informant file," and asked for records "limit[ed] . . . to the first 500 pages which fall within [three specified categories]." *Id.* Although agencies

should construe FOIA requests liberally, *see Nation Magazine*, 71 F.3d at 890, that language plainly "clarif[ies]" that Clemente's request is limited to records in "any informant file" on Scarpa.

Clemente alleges that she sent a second—and more expansive—letter, also on July 9, 2008. That second letter, unlike the first one, was not limited to three categories of documents in the Scarpa informant file. Instead, it sought "all records on or pertaining to Gregory Scarpa." Second Letter from James H. Lesar, Attorney, to David M. Hardy, Section Chief, FBI Record/Info. Dissemination Section (July 9, 2008).

There is no evidence, however, that Clemente's attorney ever sent, or the FBI ever received, the second July 9 letter. The FBI attests that it found no evidence, even upon re-examining its records, of its having received that letter. According to the agency, it became aware of the letter only when Clemente attached it to her second amended complaint. Third Hardy Decl. ¶¶ 4-5. Clemente offers no basis for doubting the FBI's sworn statement, especially given our presumption that agency affidavits are made in good faith. *See SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991). Moreover, neither Clemente's original complaint nor her first amended complaint referenced any second letter of July 9, 2008. To the contrary, both complaints averred that, after the first July 9 letter, there was "[n]o further correspondence" between Clemente and the Bureau. Compl. ¶ 12; First Am. Compl. ¶ 12. And unlike the first letter sent that day, the second letter contains no indication it was sent via certified mail. The district court therefore did not err in construing Clemente's request in accordance with the terms of the first July 9, 2008, letter—viz., as directed to three categories of documents in Scarpa's informant file.

Contrary to Clemente's claims, the FBI's response to the first July letter is entirely consistent with that understanding. The agency, referencing the three categories of documents set out in the first July 9 letter, stated it had "located approximately 1170 [potentially responsive] pages," quoted duplication costs consistent with that number, and ultimately released over 1,000 pages of responsive records to her. Letter from David M. Hardy, Section Chief, FBI Record/Info. Dissemination Section, to James H. Lesar, Attorney 2 (Oct. 10, 2008). Clemente incorrectly reads the FBI's response to indicate that the agency construed her request to be broader than the 500-page limit referenced in her first July 9, 2008, letter. That letter, while requesting only the first 500 pages of responsive records, specifically asked the agency to advise her of the number of additional responsive pages it had found. The FBI eventually released the additional records because Clemente paid duplication costs for them.

## B.

Having resolved the scope of Clemente's request, we now address the adequacy of the FBI's search for responsive documents. "In order to obtain summary judgment the agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). Here, the FBI's search satisfied that standard.

As the FBI declarations describe, the agency's Central Records System (CRS) contains information gathered in fulfillment of "its mandated law enforcement responsibilities." First Hardy Decl. ¶ 14. The CRS "consists of a numerical sequence of files" organized by subject matter, *id.*, and the agency searches the CRS using alphabetized

entries in the General Indices, *id.* ¶ 16. Each alphabetized entry in the General Indices is either a "main" entry, in which the name of the entry corresponds to the subject of a CRS file, or a "cross-reference[]," in which the entry is "mere[ly] mention[ed] or reference[d]" in a record within a main file on a different subject. *Id.* In response to Clemente's FOIA request, FBI Headquarters (FBIHQ) "searched the CRS using [the] subject's name in order to locate any informant files maintained at FBIHQ." *Id.* ¶ 20. That search yielded "one main informant file" directly responsive to Clemente's FOIA request. *Id.*

The agency had no obligation to conduct further searches once it found the Scarpa informant file, the precise records covered by Clemente's request. Contrary to her argument, the FBI had no need to conduct a full-text search, examine a separate electronic surveillance records system, or search for "tickler files" (duplicate files containing copies of records informally kept by supervisors). As the FBI explained in its declarations, those searches would have been redundant or beyond the scope of Clemente's specific request. *See* Sixth Hardy Decl. ¶¶ 7-8, 13. Similarly, because Clemente's request was directed to Scarpa's informant file, the FBI was not required to search cross-references, which by definition indicate references to Scarpa in files on *different* subject matters.

Clemente additionally contends that the FBI's search was inadequate because it failed to uncover records she believes must exist, including information about a trip Scarpa allegedly took to Mississippi at the behest of the FBI. At the outset, Clemente concedes that the FBI did release one record on that subject. At any rate, we have repeatedly emphasized that a search "is not unreasonable simply because it fails to produce all relevant material." *Mobley v. CIA*, 806 F.3d 568,

583 (D.C. Cir. 2015) (quoting *Meeropol v. Meese*, 790 F.2d 942, 952-53 (D.C. Cir. 1986)) (internal quotation marks omitted). When rejecting a plaintiff's challenge to the adequacy of an agency's search, we thus have explained that, even though the search "did not produce certain materials [the plaintiff] believes exist and had hoped to find[,] . . . FOIA is not a wishing well; it only requires a reasonable search for records an agency actually has." *DiBacco v. U.S. Army*, 795 F.3d 178, 190 (D.C. Cir. 2015).

Finally, Clemente seeks to demonstrate the inadequacy of the agency's search by pointing to the agency's failure to release certain records relocated from the Scarpa informant file. The agency's affidavits explain that one of those records had been incorrectly indexed to the informant file, and that, upon review, that record is unresponsive to Clemente's request. Clemente offers no basis to doubt the agency's conclusion. The remaining relocated records were moved to an informant file in the FBI's New York field office. The district court held—and the FBI asserts—that the agency had no obligation to retrieve those records because, at the time of Clemente's FOIA request, an agency regulation mandated that requests for FBI field office records be sent directly to the relevant field office. *See* 28 C.F.R. § 16.3(a) (2008). We agree that the FBI had no obligation to retrieve the relocated records from the field office in the circumstances of this case.

As an initial matter, contrary to Clemente's claim, our decision in *Campbell v. U.S. Department of Justice*, 164 F.3d 20 (D.C. Cir. 1998), *amended* (Mar. 3, 1999), did not decide the same question. In *Campbell*, the requester submitted his FOIA request to the New York field office, and we stated, "even if the New York office had searched its [electronic surveillance] index, the national office would still have been obliged to search its own index if it had cause to believe that

such a search would identify responsive information." *Id.* at 27 n.4. As the district court here recognized, the FOIA request in *Campbell* predated the agency's promulgation of the regulation requiring requests for records held by a field office to be directed to that office. *See Campbell*, 164 F.3d at 26; Revision of Freedom of Information Act and Privacy Act Regulations and Implementation of Electronic Freedom of Information Act Amendments of 1996, 63 Fed. Reg. 29591, 29594 (June 1, 1998).

An agency's procedures for conducting a search for responsive records must be reasonable. *See Pub. Citizen v. Dep't of State*, 276 F.3d 634, 642-44 (D.C. Cir. 2002). An agency thus of course cannot impose requirements on requesters that take on the character of a shell game, imposing unwarranted burdens on requesters without apparent justification. Here, though, we have no basis to conclude that the FBI acted unreasonably in requiring requests for records held by a field office to be directed to the relevant office. *See* 28 C.F.R. § 16.3(a) (2008). That regulation by nature generally aims to promote an agency's ability to respond to requests in an efficient manner. Clemente gives us no reason to find that the FBI cannot adhere to its requirement in this case. After filing this suit, Clemente in fact submitted multiple FOIA requests to the New York field office seeking records about Scarpa, and those requests are the subject of a separate suit currently pending in district court. *See* Compl. at 3-9, *Clemente v. FBI*, 71 F. Supp. 3d 262 (D.D.C. 2014) (No. 13-cv-108).

## IV.

Clemente argues that the withheld records in the Scarpa informant file fail to qualify as "records or information compiled for law enforcement purposes" within the meaning

of one of FOIA's disclosure exemptions, exemption seven. *See* 5 U.S.C. § 552(b)(7). We review the district court's grant of summary judgment on that issue de novo, *see Jefferson v. Dep't of Justice, Office of Prof'l Responsibility*, 284 F.3d 172, 176 (D.C. Cir. 2002), and we conclude that the agency properly invoked FOIA's law-enforcement exemption.

To determine "whether records are compiled for law enforcement purposes, this circuit has long emphasized that the focus is on how and under what circumstances the requested files were compiled and whether the files sought relate to anything that can fairly be characterized as an enforcement proceeding." *Id.* at 176–77 (citations and quotation marks omitted). Although an agency bears the burden to show that the records meet the exemption-seven threshold, *id.* at 178, the FBI's "decision to invoke exemption 7 is entitled to deference" because the agency "specializes in law enforcement." *Campbell*, 164 F.3d at 32. To meet the agency's burden using declarations, the declarations must establish a connection between the assertedly exempt records and an inquiry into "a possible security risk or violation of federal law." *Id.* (quoting *Pratt v. Webster*, 673 F.2d 408, 420-21 (D.C. Cir. 1982)) (internal citations omitted). In addition, the declarations must establish a "rational nexus" between the inquiry and "one of the agency's law enforcement duties." *Id.* (internal quotation marks omitted).

The FBI's declarations here show that the withheld records in the Scarpa informant file were "compiled for law enforcement purposes." The first Hardy declaration states, "[t]he records responsive to plaintiff's requests pertain to the investigation of the activities of [Scarpa] . . . as a [Top Echelon] informant for the FBI and . . . in the [Mafia] pursuant to[] 18 U.S.C. § 1961," the Racketeer Influenced and Corrupt Organizations (RICO) Act, which targets organized

crime. First Hardy Decl. ¶ 40. The Sixth Hardy declaration further explains that the FBI compiled the records

> to collect evidence and/or information from an established informant, and document and monitor the actions of this informant, pursuant to [RICO]. RICO enforcement is a specific, and well established criminal law enforcement function of the FBI. Furthermore, the FBI utilizes its informant program as a vital resource to further its varied criminal investigative obligations worldwide.

Sixth Hardy Decl. ¶ 15. The declarations thus demonstrate the requisite connection between Scarpa, potential violations of a law targeting organized criminal activity, and the FBI's duty to enforce that law. *See Campbell*, 164 F.3d at 32.

Clemente argues that the records fail to meet the exemption-seven, "law enforcement purposes" threshold because Scarpa and his handler allegedly used the information gathered by the FBI for unlawful purposes. For example, Clemente alleges that Scarpa's handler gave Scarpa the address where one of Scarpa's rivals had been surveilled by federal agents so that Scarpa could kill him. Even if Scarpa and his handler took and misused FBI information, however, records reflecting some of the same information could have been *compiled* for a law enforcement purpose.

Clemente's remaining arguments are similarly unpersuasive. She contends that Scarpa's activities were "non-specified spying" untethered to any particular investigation. Appellant Br. 55-56, 58. The FBI's declarations make clear, however, the relationship between Scarpa's informant activities and the FBI's efforts to gather information about the Mafia, a criminal enterprise. That

suffices to meet the exemption-seven threshold. Clemente also claims that the records were compiled for administrative purposes as part of FBI oversight of an employee, rather than for law-enforcement purposes. But as we have explained, "if the investigation is for a possible violation of law, then the inquiry is for law enforcement purposes, as distinct from customary surveillance of the performance of duties by government employees." *Jefferson*, 284 F.3d at 177. The records in Scarpa's informant file thus qualify for withholding under the law-enforcement exemption.

V.

Clemente next challenges the district court's decision to deny her motions for interim attorney fees. Under FOIA, a court "may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case . . . in which the complainant has substantially prevailed." 5 U.S.C. § 552(a)(4)(E)(i). We have thus described the court's analysis in the context of final attorney fees as a two-pronged inquiry: whether the plaintiff substantially prevailed and, if so, whether certain factors suggest the plaintiff is entitled to attorney fees. *Brayton v. Office of the U.S. Trade Representative*, 641 F.3d 521, 524 (D.C. Cir. 2011).

Here, the government neither questions the district court's authority to grant interim fees under FOIA nor disputes whether Clemente substantially prevailed. The only question thus is whether the district court committed legal or factual errors in declining to grant Clemente interim fees. As we have said in the context of final fee awards, "we review the district court's refusal to award attorney fees for abuse of discretion." *Brayton*, 641 F.3d at 524. We find an

insufficient basis for concluding that the court abused its discretion in denying Clemente interim fees.

In twice declining to grant Clemente an interim award of attorney fees, the district court took into account the following four factors, drawn from *Allen v. FBI*, 716 F. Supp. 667 (D.D.C. 1988): the financial hardship to Clemente and her attorney of delaying the fee award, "unreasonable delay on the government's part," "the length of time the case has been pending," and "the period of time likely to be required before the litigation is concluded." Order Denying Pl.'s Mot. for Interim Award of Att'y Fees and Costs 3 (quoting *Allen*, 716 F. Supp. at 672); *see id.* at 5; *see also Clemente*, 166 F. Supp. 3d at 14-15. Clemente claims that the district court erred in the factors it took into account and its application of those factors to this case.

We find no error in the district court's decision to account for financial hardship, delay, and the duration of the litigation in considering whether to award interim fees. Under FOIA, a district court "may" grant attorney fees to a plaintiff who has "substantially prevailed." 5 U.S.C. § 552(a)(4)(E)(i). It is eminently reasonable for a district court, in determining whether to award interim fees or instead wait to award fees until the end of the litigation, to consider factors going to the plaintiff's ability to continue the litigation.

In fact, our only published opinion examining interim fees under FOIA approvingly referenced the consideration of such factors. In *National Association of Criminal Defense Lawyers, Inc. v. U.S. Department of Justice*, we declined to find an interim fee award immediately appealable under the collateral order doctrine. 182 F.3d 981 (D.C. Cir. 1999). The district court in that case had granted interim fees after "[f]inding that the protracted litigation had imposed a

financial hardship upon counsel." *Id.* at 983. In denying the government's interlocutory appeal of the interim award, we noted:

> the financial hardship that may warrant an interim award of attorney's fees is not the same as the irreparable harm needed to justify interlocutory review. For an interim award of attorney's fees it is enough that the fee is high relative to the party's or its counsel's ability to continue financing the litigation.

*Id.* at 986 (citing *Allen,* 716 F. Supp. at 670).

Applying the aforementioned factors, the district court twice denied Clemente interim fees. In its first order, the court found Clemente's terminal illness and ability to pay irrelevant to the fees determination because her attorney took the case on contingency. The court further concluded that Clemente's lawyer had established only a "general financial hardship that faces all attorneys who accept cases on a contingency fee basis." Order Denying Pl.'s Mot. for Interim Award of Att'y Fees and Costs 5. "Most importantly," the court believed the case would soon end because the FBI intended to renew its summary judgment motion. *Id.*

Two years later, the court denied Clemente's renewed motion for interim fees. It again found that Clemente failed to demonstrate financial hardship, noting that only some of her attorney's financial losses were attributable to this case. *Clemente*, 166 F. Supp. 3d at 14. The court also observed that Clemente's attorney had recently been awarded close to $300,000 in legal fees in a separate FOIA matter. *Id.* at 14-15. In response to Clemente's claim that the duration of the litigation was due to the FBI's "unreasonable delay," *id.* at 14,

the district court instead found it "largely attribut[able] to [Clemente]'s dilatory conduct," *id.* at 15. Finally, the court predicted the case would soon end, thus allowing it to "address the matter of attorney's fees at the conclusion of this litigation." *Id.*

The district court acted within its discretion in declining to grant Clemente an interim award of attorney fees. With respect to the financial hardship analysis, we are unpersuaded that the court acted unreasonably in requiring Clemente and her counsel to show particularized hardship beyond the hardship common to contingency cases. Furthermore, the district court's decision to exclude Clemente's ability to pay from its analysis was logical because, by definition, a plaintiff in a contingency case has no obligation to pay counsel out of pocket. Relatedly, the court reasonably evaluated Clemente's attorney's overall income from legal fees in order to determine whether delaying a fee award would constitute a hardship. Indeed, it would be anomalous for a district court, once it decided to take into account financial hardship, to ignore the attorney's financial ability to continue litigating the case.

We also find no basis to set aside the district court's analysis of the parties' relative responsibility for the delays in the litigation, a subject about which that court had first-hand familiarity. And the court provided a reasonable basis, each time it denied interim fees, for assuming the litigation would soon end. Indeed, five months after the court denied reconsideration of its second order denying interim fees, Clemente filed a motion for final attorney fees. The district court partially granted that motion, and, as of the time of this opinion, is deciding a related reconsideration motion. For all of these reasons, although the district court could have

approached the analysis differently, the court acted within its discretion in denying interim fees.

## VI.

The final issue we confront is whether the district court erred in dismissing the remainder of the case. "District courts have inherent power to dismiss a case *sua sponte* for a plaintiff's failure to prosecute or otherwise comply with a court order," and we review the district court's exercise of its dismissal authority for abuse of discretion. *Peterson v. Archstone Communities LLC*, 637 F.3d 416, 418 (D.C. Cir. 2011). We conclude that the district court acted within its authority here.

On September 17, 2014, the FBI filed its latest *Vaughn* index in which it explained its rationale for withholding certain information. In October 2015, the district court expressed concern "about the glacial pace" of the litigation and gave Clemente until November 13, 2015, to inform the FBI of any objections to the index or else be deemed to have waived them. *See Clemente*, 166 F. Supp. 3d at 15. The court further set a January 11, 2016, deadline for Clemente to file a brief detailing any unresolved objections. *See id.* After Clemente failed to file a brief by the deadline, the court dismissed the case, noting that Clemente had waived objections to the *Vaughn* index.

While we have referred to dismissal as a "harsh sanction," *see Peterson*, 637 F.3d at 418 (quoting *English-Speaking Union v. Johnson*, 353 F.3d 1013, 1016 (D.C. Cir. 2004)), the district court here acted within its authority. As an initial matter, the district court made it clear that Clemente would waive any remaining objections to the government's latest *Vaughn* index if she failed to raise objections by a

certain date. Once Clemente waived those objections, there appear to be few if any remaining unresolved issues on the merits of the case. More significantly, Clemente indicated in her briefing, and her attorney conceded at oral argument, that she intentionally let the district court dismiss the case so that she could more quickly bring issues—particularly the denial of interim attorney fees—to our court for review. As we explained when evaluating a dismissal pursuant to Rule 41(b), dismissal can sometimes be justified "when there is some indication that the client or attorney consciously fails to comply with a court order cognizant of the drastic ramifications." *Gardner v. United States*, 211 F.3d 1305, 1309 (D.C. Cir. 2000). In these circumstances, we conclude that the district court did not abuse its discretion in dismissing the remainder of the case.

\* \* \* \* \*

For the foregoing reasons, we affirm the district court's grant of summary judgment in favor of the FBI, its denial of interim attorney fees, and its dismissal of the remaining issues in the case.

*So ordered.*