Brett C. **KIMBERLIN**, Appellant,

v.

**DEPARTMENT OF JUSTICE**, Appellee.

No. 96–5250.

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 26, 1998.

Decided April 7, 1998.

Julia Court, Washington, DC, appointed by the court, argued the cause as amicus curiae supporting appellant, with whom Thomas M. Barba was on the briefs. Brett C. Kimberlin, Memphis, TN, appearing pro se, entered an appearance.

Cynthia A. Schnedar, Assistant U.S. Attorney, Washington, DC, argued the cause for appellee, with whom Mary Lou Leary, U.S. Attorney at the time the brief was filed, Washington, DC, and R. Craig Lawrence, Assistant U.S. Attorney, Washington, DC, were on the brief.

Before: GINSBURG, HENDERSON, and RANDOLPH, Circuit Judges.

GINSBURG, Circuit Judge:

Appellant Brett C. Kimberlin sued the Department of Justice seeking disclosure, pursuant to the Freedom of Information Act, 5 U.S.C. § 552, of documents relating to an investigation of an Assistant United States Attorney by the Department's Office of Professional Responsibility. The district court determined that the Government properly withheld the information pursuant to Exemption 7(C) to the FOIA because the Department had compiled the requested information for "law enforcement purposes." *See* 5 U.S.C. § 552(b)(7)(C). We agree that the nature of the withheld information brings it presumptively within Exemption 7(C). Because the district court failed to determine whether any of the information could be segregated and disclosed without compromising the nondisclosable material, however, we remand the case to the district court.

## I. BACKGROUND

In 1982 the Drug Enforcement Administration investigated and found baseless certain allegations that then-U.S. Senator Dan Quayle had used cocaine. During the 1992 presidential campaign, renewed speculation in the media about Quayle's alleged cocaine use led AUSA John Thar, of the Southern District of Indiana, to disclose the findings of the 1982 investigation to the *Indianapolis Star* with the following explanation:

> I'm disclosing what I have, with approval, simply because so much has been made out of nothing.... It's all been so misconstrued.... I'm making an honest disclosure of what was found, hoping to put an end to it.

James A. Gillaspy, *Feds Reveal Details of Quayle Drug Probe,* Indianapolis Star, Nov. 13, 1991, at 1. The *Star* described Thar's disclosure as "a rare departure from the Department of Justice policy of withholding comment about any investigation." The Office of Professional Responsibility, which handles allegations of improper conduct by DOJ officials, investigated the disclosure. In response to an inquiry from the press Thar acknowledged that he was disciplined as a result of the OPR investigation at a level of severity somewhere between "you've done

something wrong" and "you're fired." Aaron M. Freiwald, *Quayle Accuser Presses Conspiracy Claims,* Legal Times, March 30, 1992 at 1, 20.

In 1994 Kimberlin sought disclosure pursuant to the FOIA of "all papers, documents and things pertaining to the OPR investigation" of Thar. Initially the OPR gave a standard *Glomar* response, refusing either to confirm or to deny that such an investigation had taken place. *Cf. Phillippi v. CIA,* 546 F.2d 1009, 1011 (D.C.Cir.1976) (CIA refused to confirm or deny existence of information regarding research vessel *Glomar Explorer*). When Kimberlin brought suit in district court to compel disclosure and confronted the OPR with evidence that Thar had acknowledged publicly that the OPR had investigated his disclosure to the *Star,* the OPR withdrew its *Glomar* response and released two press clippings from its file on the investigation. The OPR withheld the balance of the file on the ground that it comes within Exemption 7(C) to the FOIA, which provides that an agency may withhold "records or information compiled for law enforcement purposes" to the extent that the production thereof "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C).

The district court reviewed *in camera* some or all of the OPR file, together with a memorandum from the Government detailing its reasons for withholding the contents of the file. Upon cross-motions for summary judgment, the district court held that "the Government has properly invoked Exemption 7(C) and may continue to withhold such information from public disclosure." *Kimberlin v. Department of Justice,* 921 F.Supp. 833, 836 (D.D.C.1996). Kimberlin appealed, and this court appointed an *amicus curiae* to argue in support of Kimberlin.

## II. ANALYSIS

The *amicus* argues that the district court erred in three ways: first, by determining that the OPR's investigation was for "law enforcement purposes" and hence potentially within the scope of Exemption 7(C); second, by failing properly to balance the interests for and against disclosure; and third, by

failing to order release of any reasonably segregable portion of the OPR file. We review *de novo* the district court's grant of summary judgment, applying the same standards that governed the district court's decision. *See The Nation Magazine v. United States Customs Serv.,* 71 F.3d 885, 889 (D.C.Cir.1995).

### A. Does Exemption 7(C) Apply?

Exemption 7(C) to the FOIA permits an agency to withhold information "compiled for law enforcement purposes" to the extent that such information "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). It does not exempt from disclosure, as we have previously had occasion to note, "[i]nternal agency investigations ... in which an agency, acting as the employer, simply supervises its own employees." *Stern v. F.B.I.,* 737 F.2d 84, 89 (1984). Material compiled in the course of such internal agency monitoring does not come within Exemption 7(C) even though it "might reveal evidence that later could give rise to a law enforcement investigation." *Id.* On the other hand,

> an agency's investigation of its own employees is for "law enforcement purposes" ... if it focuses "directly on specifically alleged illegal acts, illegal acts of particular identified officials, acts which could, if proved, result in civil or criminal sanctions."

*Id.* (quoting *Rural Housing Alliance v. U.S. Dept. of Agriculture,* 498 F.2d 73, 81 (D.C.Cir.1974)).

The OPR investigation here at issue was conducted in response to and focused upon a specific, potentially illegal release of information by a particular, identified official. The investigation was intended to discover whether John Thar had violated any law by revealing to the press information concerning an investigation of the Vice–President, who was then running for re-election. The investigation was not aiming generally, as was the investigation in *Rural Housing* for example, "to insure that [the agency's] employees are acting in accordance with statutory mandate and the agency's own regulations." 498 F.2d

948

at 81. We conclude, therefore, that the Government compiled the information in the OPR file for law enforcement purposes, with the result that the Government may withhold the requested records pursuant to Exemption 7(C) if such disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. 552(b)(7)(C).

B. The Balance of Public and Private Interests

█ The district court weighed the interests for and against disclosure as follows:

[P]ublic employees have an expectation that information gathered in the course of internal investigations will remain private. *Beck v. Department of Justice,* 997 F.2d 1489, 1494 (D.C.Cir.1993). While the public does have an interest in examining the internal disciplinary processes of the Department of Justice, such public interest cannot be held to be superior to the privacy interests of those employees who may, from time to time, come under the scrutiny of OPR. It would be grossly unfair to release such information and subject dedicated public servants to unnecessary scrutiny for every complaint that has been filed, regardless of the merits.

921 F.Supp. at 836. In stating that "the public does have an interest in examining the internal disciplinary processes of the Department of Justice," the district court followed the teaching of the Supreme Court that the main purpose of the FOIA is to open agency action to the light of public scrutiny. As the Supreme Court put the matter:

[A]lthough there is undoubtedly some public interest in anyone's criminal history, especially if the history is in some way related to the subject's dealing with a public official or agency, the FOIA's central purpose is to ensure that the Government's activities be opened to the sharp eye of public scrutiny, not that information about private citizens that happens to be in the warehouse of the Government be so disclosed.

*United States Dept. of Justice v. Reporters Committee for Freedom of the Press,* 489

U.S. 749, 774, 109 S.Ct. 1468, 1482, 103 L.Ed.2d 774 (1988) (emphases deleted).

The present parties take the Court's point, of course, but they disagree about how disclosure of the OPR materials concerning the investigation of Thar would serve the "central purpose" of the FOIA. On the one hand, the *amicus* argues that "the OPR records requested could not be more central to FOIA's core purpose ... because by nature such records contain information that examines and documents agency action." On the other, the Government contends that "how the Department of Justice handled one isolated case concerning an alleged leak would not shed enough light on how the Department in general handles any alleged leaks" to warrant disclosure of the requested materials. The Government also asserts that in this case Exemption 7(C) protects the privacy interests not only of Thar but also of "third persons whose identities would be revealed by release of the files."

The *amicus* faults the district court for creating a categorical rule against disclosure of OPR files and argues that OPR investigations

are not sufficiently uniform in the privacy interests at stake, the subject matter involved, the rank of the public officials involved, the type of misconduct investigated, or a myriad of other factors, to comprise a single category in which the balance would always tip in favor of exemption.

*Cf. Reporters Committee,* 489 U.S. at 776, 109 S.Ct. at 1483–84 ("categorical decisions may be appropriate and individual circumstances disregarded when a case fits into a genus in which the balance [of interests for and against disclosure] characteristically tips in one direction"). For its part, the Government does not disagree with the *amicus* that the balancing of interests with regard to OPR files should be done on a case-by-case basis rather than categorically; the Government just reads the district court to have performed such an ad hoc balancing and not to have created a categorical rule.

█ In view of the parties' agreement, and regardless what the district court may have had in mind, we may assume for purposes of

this opinion that the balance of interests relating to the disclosure of material in an OPR file will not so often tip toward withholding that a categorical rule against disclosure is appropriate. The alternative of case-by-case balancing should not be as complicated as implied by the *amicus*'s reference to a "myriad" of relevant factors, however, lest it come to resemble the open-ended " 'kitchen sink' rule of reason" in antitrust law. Charles F. Rule, *Point: As American as Baseball, Apple Pie, or Guidelines,* 4 Antitrust 31, 32 (1989); *cf.* Frank H. Easterbrook, *The Limits of Antitrust,* 63 Texas L.Rev. 1, 12 (1984) (commenting upon the rule of reason that "[w]hen everything is relevant, nothing is dispositive"). In view of the purpose of the FOIA, it will ordinarily be enough for the court to consider, when balancing the public interest in disclosure against the private interest in exemption, the rank of the public official involved and the seriousness of the misconduct alleged. *Cf. Stern,* 737 F.2d at 94 ("There is a decided difference between knowing participation by a high-level officer in such deception and the negligent performance of particular duties by the two other lower-level employees").

Here the OPR has investigated a staff-level government lawyer in connection with the possibly unauthorized and perhaps illegal release of information to the press. Under these circumstances, we have no doubt that disclosure of the OPR investigative file would occasion an invasion of Thar's privacy disproportionate to, and therefore "unwarranted" by, such insight as the public would gain into "what the Government is up to." *Reporters Committee,* 489 U.S. at 750, 109 S.Ct. at 1470.

■ The *amicus* urges upon us the particularized claim that Thar "waived any privacy interest of his own when he admitted to the press that he was investigated and disciplined for releasing the Vice President's DEA files." But surely Thar did not, merely by acknowledging the investigation and making a vague reference to its conclusion, waive all his interest in keeping the contents of the OPR file confidential. And although government officials, as we have stated before, may have a "somewhat diminished" privacy interest, they "do not surrender all rights to personal privacy when they accept a public appointment." *Quinon v. FBI,* 86 F.3d 1222, 1230 (D.C.Cir.1996).

That said, Thar's statement to the press undoubtedly does diminish his interest in privacy: the public already knows who he is, what he was accused of, and that he received a relatively mild sanction. He still has a privacy interest, however, in avoiding disclosure of the details of the investigation, of his misconduct, and of his punishment—and perhaps, too, an interest in preventing hitherto speculative press reports of his misconduct from receiving authoritative confirmation from an official source. *Cf. Bast v. U.S. Dept. of Justice,* 665 F.2d 1251, 1255 (D.C.Cir.1981).

■ We agree with the district court's implication, therefore, that official confirmation of what has been reported in the press and the disclosure of additional details could reasonably be expected to constitute an unwarranted invasion of Thar's personal privacy. Accordingly, the Government properly asserted Exemption 7(C) as a bar to disclosure with respect to Thar. It goes almost without saying, moreover, that individuals other than Thar whose names appear in the file retain a strong privacy interest in not being associated with an investigation involving professional misconduct; hence, the Government correctly asserted Exemption 7(C) with respect to them as well.

C. Segregability

■ The FOIA requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt." 5 U.S.C. § 552(b). More specifically, "[i]t has long been the rule in this Circuit that non-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions." *Mead Data Central, Inc. v. United States Dep't of the Air Force,* 566 F.2d 242, 260 (D.C.Cir.1977).

The *amicus* argues that the "OPR's Vaughn index failed to establish that OPR could not segregate and release nonexempt

information" and, relatedly, that the district court erred by failing to determine whether there are any non-exempt portions of the requested information sufficiently segregable that the OPR could have released them. Both points are well-taken.

■ In order to withhold an entire file pursuant to Exemption 7(C), the Government must show that disclosure of any part of the file "could reasonably be expected to constitute an unwarranted invasion of personal privacy." Moreover, the Government must make that showing in its *Vaughn* index and in such affidavits as it may submit therewith. *See generally Vaughn v. Rosen*, 484 F.2d 820, 827–28 (D.C.Cir.1973) (outlining requirements agency must meet in indexing documents for which it claims exemption from disclosure under FOIA). We recently explained:

> The purpose of a *Vaughn* index is to permit adequate adversary testing of the agency's claimed right to an exemption, and those who contest denials of FOIA requests—who are, necessarily, at a disadvantage because they have not seen the withheld documents—can generally prevail only by showing that the agency's *Vaughn* index does not justify withholding information under the exemptions invoked.

*Schiller v. NLRB*, 964 F.2d 1205, 1209 (D.C.Cir.1992) (citations omitted).

■ In the *Vaughn* index it submitted in this case, the Government asserts only that entire documents are exempt from disclosure. As the Government should know by now, however, "[t]he focus in the FOIA is information, not documents, and an agency cannot justify withholding an entire document simply by showing that it contains some exempt material." *Mead Data Central*, 566 F.2d at 260. In the most egregious instance the Government claims that Exemption 7(C) applies to a 37–page document consisting of a cover letter and 36 pages described only as "material collected by the United States Attorney's Office." As we have pointed out before, "*Vaughn* itself requires agencies to 'specify in detail which portions of the document are disclosable and which are allegedly exempt.' 484 F.2d at 827. A submission that does not do that

does not even qualify as a '*Vaughn* index.'" *Schiller*, 964 F.2d at 1210.

The Government does argue that because "the requested OPR file focuses completely on one government employee," the "[r]elease of any of the file, whether redacted or not, would necessarily ... cause AUSA Thar's name to be associated with allegations of misconduct and could cause him 'great personal and professional embarrassment.'" Neither the *amicus* nor the court, however, is obliged to accept that conclusion without more specification of the types of material in the file.

■ Perhaps because of the manifest inadequacy of the Government's *Vaughn* index, the district court exercised its discretion to perform its own *in camera* inspection of certain documents in the file. The district court does not appear to have considered the segregability issue in the course of its inspection, however; the court made no findings regarding segregability despite our prior guidance that "it is error for a district court to simply approve the withholding of an entire document without entering a finding on segregability, or the lack thereof." *Schiller*, 964 F.2d at 1210 (quoting *Church of Scientology v. Department of the Army*, 611 F.2d 738, 744 (9th Cir.1979)). Therefore, we must remand this case to the district court to determine whether any of the withheld documents contains material that can be segregated and disclosed without unwarrantably impinging upon anyone's privacy. *See Krikorian v. Department of State*, 984 F.2d 461, 467 (D.C.Cir.1993) (remanding "because the district court did not make specific findings of segregability regarding each of the withheld documents").

## III.  CONCLUSION

The district court correctly concluded that the OPR compiled its file on John Thar's release of information to the *Indianapolis Star* for "law enforcement purposes." The court also correctly determined that some information in the OPR file falls within Exemption 7(C) to the FOIA: Thar was not a high-ranking official in the Department of Justice, and the alleged wrongdoing concern-

ing which he was investigated was not so serious that the public's interest in disclosure warrants the invasion of Thar's privacy that would attend disclosure of the investigative file. The district court erred, however, in failing to make any finding regarding the segregability of such disclosable information as may be in the file. Accordingly, we remand this matter for the district court to establish whether any reasonably segregable portion of the documents in the withheld OPR file can be disclosed.

*So ordered.*