United States Court of Appeals

 FOR THE DISTRICT OF COLUMBIA CIRCUIT

 Argued February 15, 2002 Decided April 2, 2002 

 No. 00-5449

 Willie Jefferson, 
 Appellant

 v.

 Department of Justice, 
 Office of Professional Responsibility, 
 Appellee

 Appeal from the United States District Court 
 for the District of Columbia 
 (No. 00cv01489)

 Brian G. Friel, appointed by the court, argued the cause 
for amicus curiae on the side of appellant. With him on the 
briefs were Michael N. Levy.

 Willie Jefferson, appearing pro se, was on the brief for 
appellant.

 Vincent H. Cohen, Jr., Assistant U.S. Attorney, argued the 
cause for appellee. On the brief were Roscoe C. Howard Jr., 
U.S. Attorney, R. Craig Lawrence and Meredith Manning, 
Assistant U.S. Attorneys.

 Before: Henderson, Randolph and Rogers, Circuit Judges.

 Opinion for the Court filed by Circuit Judge Rogers.

 Dissenting opinion filed by Circuit Judge Randolph.

 Rogers, Circuit Judge: Willie Jefferson appeals the grant 
of summary judgment to the Justice Department on his 
request under the Freedom of Information Act ("FOIA"), 5 
U.S.C. s 552(a) (1996 & West Supp. 2001), for "any and all 
records created by and/or received by the ... Office of 
Professional Responsibility ("OPR") in regards to Assistant 
United States Attorney ("AUSA") Jeffrey Scott Downing." 
Previously, this court affirmed the grant of summary judg-
ment insofar as Jefferson did not challenge the district court's 
segregability determination or the government's reliance on 5 
U.S.C. s 552(b)(2) ("Exemption 2") and s 552(b)(5) ("Exemp-
tion 5") to redact certain material. Order, May 14, 2001. 
Thus, the only question now before the court is whether the 
government properly relied on s 552(b)(7)(C) ("Exemption 
7(C)") in redacting certain other documents that it released to 
Jefferson, and in refusing "to confirm or deny the existence of 
any additional responsive records," the so-called Glomar re-
sponse. Id. We hold, on de novo review, that the district 
court correctly concluded that OPR compiled the files that it 
released to Jefferson for law enforcement purposes, and that 
the redacted information in these files falls within Exemption 
7(C). However, because OPR was not entitled to make a 
Glomar response as to all of its files in the absence of an 
evidentiary showing to support that response, we remand the 
case to the district court to determine whether OPR had non-
law enforcement files regarding AUSA Downing as of Decem-
ber 2, 1999, the date of OPR's response to Jefferson's FOIA 
request. See Bonner v. Dep't of State, 928 F.2d 1148, 1152 
(D.C. Cir. 1991).

 I.

 Following his conviction for drug offenses and his sentence 
to life imprisonment without parole in the Middle District of 
Florida, Jefferson filed several FOIA requests to obtain 
records from the OPR. The first FOIA request of August 8, 
1995, sought his complete criminal file and was denied under 
FOIA Exemption 7(A) because his criminal appeal was pending. 
See Jefferson v. Reno, 123 F. Supp. 2d 1, 2 (D.D.C. 
2000). While his FOIA appeal was pending, but after his 
conviction had been affirmed on direct appeal, the govern-
ment informed the district court on October 1, 1997, that 
AUSA Downing, the trial prosecutor, had "purged" the crimi-
nal case files. See id. at 2-3. While file reconstruction was 
going on pursuant to the district court's order, Jefferson 
moved for sanctions against the Justice Department and 
AUSA Downing. See id. at 2-3. In March 2000, the district 
court referred AUSA Downing to OPR so that it could 
"investigate whether he violated the law or engaged in profes-
sional misconduct." Id. at 6. After the Justice Department 
released additional documents relating to his criminal trial 
files, see id. at 5, and the court conducted a limited in camera 
review of eleven disputed documents, the district court en-
tered a final judgment on August 27, 2001.

 Jefferson's FOIA request at issue in the instant appeal 
followed a period of correspondence between Jefferson and 
OPR that eventually led to the release of redacted portions of 
"certain records pertaining to a complaint filed by" Jefferson 
against AUSA Downing, see id. at 5, but not such other files 
as OPR may have regarding AUSA Downing. After filing his 
first FOIA request on August 8, 1995. Jefferson wrote a 
letter to OPR in October 1995, charging AUSA Downing with 
prosecutorial misconduct before the Grand Jury and alleging 
the deliberate withholding and concealing of exculpatory evi-
dence and the presentation of perjured and manufactured 
evidence at his trial. Jefferson further alleged that AUSA 
Downing had conspired with a confidential informant to give 
false testimony at trial and had violated Fed. R. Crim. P. 
48(a). OPR responded that it found no basis on which action 
by OPR would be warranted. After Jefferson wrote two 

additional letters, again alleging prosecutorial misconduct, 
OPR advised Jefferson that the proper forum for his com-
plaint was the court and that OPR found no allegation upon 
which action by OPR would be warranted. Jefferson re-
sponded by letter of August 2, 1996, that: "In order for me to 
document your office's assistance in this matter would you 
please forward to me a copy of the investigative report your 
office completed."

 On September 15, 1998, Jefferson filed another complaint 
with OPR, captioned "RE: 'Request for the initiation of 
criminal charges against [AUSA] Downing,' " alleging viola-
tions of Title 18 of the United States Code for obstruction of 
justice and deprivation of constitutional rights, as well as a 
privacy claim under Title 28 of the Code of Federal Regula-
tions for giving unauthorized access to his criminal file for the 
purpose of destroying those records. OPR responded that it 
found no basis for any action based on Jefferson's allegations. 
Jefferson, responding to OPR's statement that it would fur-
ther review the matter if he could supply more details, 
submitted two declarations and repeated his allegations that 
his criminal trial records were "improperly accessed and 
destroyed" by AUSA Downing. OPR advised Jefferson on 
May 3, 1999, that it found no allegation of misconduct on 
which OPR action would be warranted.

 Jefferson filed the FOIA request at issue on August 3, 
1999, prior to the time the district court referred AUSA 
Downing for an investigation by OPR. This time Jefferson 
sought "copies of any and all records created and/or received 
by ... [OPR] ... in regards to" AUSA Downing, and "an 
index of any files maintained by OPR in regards to" AUSA 
Downing. The OPR responded by letter of December 2, 
1999, that "[i]t is the policy of this Office when responding to 
FOIA requests from third-party individuals to refuse to con-
firm or deny the existence of records concerning Department 
of Justice employees," absent their consent or "an overriding 
public interest," citing FOIA Exemption 7(C). Nevertheless, 
OPR stated that it had identified 28 documents responsive to 
Jefferson's request "pertaining to a complaint filed by you," 
and released eleven in their entirety and seventeen in part. 

OPR withheld the remaining information pursuant to FOIA 
Exemptions 2, 5, and 7(C).

 Following denial of his administrative appeal, Jefferson 
filed suit challenging OPR's FOIA determination. The gov-
ernment moved for summary judgment and submitted a 
declaration by Dale K. Hall, an OPR employee and FOIA 
specialist, stating that "[a]ll records relating to OPR's investi-
gations are compiled for law enforcement purposes and, 
therefore, are deemed to be law enforcement files" within 
Exemption 7(C). In addition, Hall stated that "all non-
exempt information contained in the 17 [redacted] documents 
was reasonably segregated for release" to Jefferson, and that 
pursuant to Exemption 7(C), "OPR [w]ould neither confirm 
nor deny any other records that may or may not exist" on 
AUSA Downing. The district court granted the govern-
ment's motion for summary judgment. The court ruled that 
because OPR's investigation related to allegations of criminal 
misconduct, the records were prepared for law enforcement 
purposes within the meaning of Exemption 7(C). The court 
also ruled that Jefferson had failed to show that OPR was 
engaged in illegal activity, thereby confirming the appropri-
ateness of the redactions in the released materials. The 
court rejected Jefferson's challenge to OPR's claim that all 
segregable portions of the records had been disclosed. Of 
particular significance, the district court further ruled that 
OPR's Glomar response refusing to confirm or deny whether 
it possessed any other files on AUSA Downing was proper 
because such records would not shed light on the agency's 
conduct and Jefferson "seeks information in law enforcement 
files related to an individual who has not waived his rights to 
privacy with respect to any such records."

 II.

 On appeal, Jefferson, assisted by amicus, contends that the 
district court erred as a matter of law in allowing the 
government to make a Glomar response with respect to any 
other files that OPR may possess on AUSA Downing. Be-
cause OPR conducts both law enforcement and non-law en-

forcement activities, and Jefferson's FOIA request asked for 
"all records" relating to AUSA Downing and not simply those 
compiled for law enforcement purposes, Jefferson maintains 
that OPR had to identify the records at issue and establish 
with particularity that they were compiled for law enforce-
ment purposes. Alternatively, Jefferson contends that even if 
OPR could properly issue a Glomar response under Exemp-
tion 7(C) in some circumstances, there was no evidence 
showing that all of OPR's files relating to AUSA Downing 
were compiled for law enforcement purposes. Jefferson also 
contends that the district court erred in failing both to review 
whether the 17 redacted documents were compiled for law 
enforcement purposes, and to determine the segregability of 
the non-law enforcement documents. Finally, Jefferson con-
tends that the district court erred in finding that AUSA 
Downing's privacy interest outweighed the public interest in 
disclosure of the records even if they were compiled for law 
enforcement purposes.

 Our review of the grant of summary judgment is de novo. 
Tao v. Freeh, 27 F.3d 635, 638 (D.C. Cir. 1994). The court 
must "determine, from inspection of the agency affidavits 
submitted, whether the agency's explanation was full and 
specific enough to afford the FOIA requester a meaningful 
opportunity to contest, and the district court an adequate 
foundation to review, the soundness of the withholding." 
King v. Dep't of Justice, 830 F.2d 210, 217-18 (D.C. Cir. 
1987).

 Under FOIA Exemption 7(C), the requirement that "each 
agency shall make available to the public information" does 
not apply to matters that are:

 records or information compiled for law enforcement 
 purposes, but only to the extent that the production of 
 such law enforcement records or information ... (C) 
 could reasonably be expected to constitute an unwarrant-
 ed invasion of personal privacy.
 
5 U.S.C. s 552(b)(7)(C). In assessing whether records are 
compiled for law enforcement purposes, this circuit has long 
emphasized that the focus is on how and under what circum-

stances the requested files were compiled, see Weisberg v. 
United States Dep't of Justice, 489 F.2d 1195, 1202 (D.C. Cir. 
1973), and "whether the files sought relate to anything that 
can fairly be characterized as an enforcement proceeding." 
Aspin v. Dep't of Defense, 491 F.2d 24, 27 (D.C. Cir. 1973). 
In Rural Housing Alliance v. Dep't of Agriculture, 498 F.2d 
73 (D.C. Cir. 1974), the court identified two types of investiga-
tory files that government agencies compile: (1) files in 
connection with government oversight of the performance of 
duties by its employees, and (2) files in connection with 
investigations that focus directly on specific alleged illegal 
acts which could result in civil or criminal sanctions. Id. at 
81. Again, the court emphasized that the purpose of the 
investigatory files "is the critical factor." Id. at 82. Thus, if 
the investigation is for a possible violation of law, then the 
inquiry is for law enforcement purposes, as distinct from 
customary surveillance of the performance of duties by gov-
ernment employees. Id. Then, in Pratt v. Webster, 673 F.2d 
408 (D.C. Cir. 1982), the court set forth a two-part test 
whereby the government can show that its records are law 
enforcement records: the investigatory activity that gave rise 
to the documents is "related to the enforcement of federal 
laws," and there is a rational nexus between the investigation 
at issue and the agency's law enforcement duties. Id. at 420, 
421. The court again distinguished the need "to establish 
that the agency acted within its principal function of law 
enforcement, rather than merely engaging in a general moni-
toring of private individuals' activities." Id. at 420.

 The court applied these principles in Kimberlin v. Dep't of 
Justice, 139 F.3d 944 (D.C. Cir. 1998). In that case, the 
requester asked for "all papers, documents and things per-
taining to the OPR investigation" of another AUSA. Id. at 
947. Applying the distinction between law enforcement rec-
ords and internal agency investigations set forth in Rural 
Housing, 498 F.2d at 81, the court stated that "[m]aterial 
compiled in the course of ... internal agency monitoring does 
not come within Exemption 7(C) even though it 'might reveal 
evidence that later could give rise to a law enforcement 

investigation.' " Kimberlin, 139 F.3d at 947. Concluding, 
however, that "the OPR investigation here at issue was 
conducted in response to and focused upon a specific, poten-
tially illegal release of information by a particular, identified 
official," id. at 947, the court held that the information in the 
OPR files was compiled for law enforcement purposes. Id.

 Consistent with the plain language of his FOIA request of 
August 3, 1999, Jefferson states in his pro se brief that he 
sought any and all records maintained by OPR pertaining to 
AUSA Downing "after OPR continued to refuse to investigate 
AUSA Downing in light of the overwhelming evidence demon-
strating that an investigation of AUSA Downing was warrant-
ed." As the Justice Department sees it, Jefferson is con-
cerned with OPR's failure to conduct an investigation based 
on allegations that could lead to civil or criminal sanctions, 
and is not seeking records maintained in the course of general 
oversight of government employees. See Appellee's Br. at 14. 
If so, then it would appear that the district court properly 
ruled that the OPR files requested by Jefferson satisfied 
Exemption 7(C)'s threshold requirement. However, Jeffer-
son points out in his pro se brief that his request extends to 
records that OPR maintains as "an internal affairs unit acting 
as [an] employer simply supervising its employees."

 The Justice Department regulations provide, in relevant 
part, that OPR "shall ... [r]eceive and review any informa-
tion or allegation concerning conduct by a Department em-
ployee that may be in violation of law, regulations or orders, 
or of applicable standards of conduct...." 28 C.F.R. 
s 0.39a(a) (2001). In addition, OPR is required to:

 Refer any matter that appears to warrant examination in 
 the following manner:
 
 (1) If the matter appears to involve a violation of law, to 
 the head of the investigative agency having jurisdiction 
 to investigate such violations;
 
 (2) If the matter appears not to involve a violation of law, 
 to the head of the office, division, bureau or board to 
 which the employee is assigned, or to the head of its 
 internal inspection unit....
 
Id. s 0.39a(d). Among the information that OPR may receive 
are "[r]eports containing the findings of any investigation 
undertaken upon matters [that appear not to involve a viola-
tion of law] ... and the administrative sanction to be im-
posed, if any sanction is warranted." Id. s 0.39a(e). Consis-
tent with the distinction drawn in Pratt, 673 F.2d at 419-21, 
and Rural Housing, 498 F.2d at 81, the regulations contem-
plate that OPR may secure reports, as distinct from compil-
ing them, that arise as a result of internal agency monitoring 
and review allegations of non-law violations by Department 
attorneys for internal disciplinary purposes. OPR's internal 
guidelines reflect a similar distinction, providing that "OPR 
reviews allegations of attorney misconduct involving violations 
of any standard imposed by law, applicable rules or profes-
sional conduct, or Departmental policy." www.us-
doj.gov/opr/index.html (last visited March 27, 2002). Thus, as 
in Kimberlin, 139 F.3d at 947, and Beck, 997 F.2d at 1492, we 
decline to hold as a matter of law that all OPR records are 
necessarily law enforcement records.

 Because the Department had the burden, under the two-
part test of Pratt, 673 F.2d at 420-21; see also United States 
Dep't of State v. Ray, 502 U.S. 164, 173 (1991), to establish as 
a threshold matter that its records are law enforcement 
records, the district court had to determine whether all of 
OPR's records relating to AUSA Downing were law enforce-
ment records before turning to a consideration of whether the 
public interest in disclosure of any law enforcement records 
was outweighed by AUSA Downing's privacy interests. See 5 
U.S.C. s 552(b)(7)(C). The district court relied on Hall's 
declaration that "[a]ll records relating to OPR's investigations 
are compiled for law enforcement purposes, and, therefore, 
are deemed to be law enforcement files." That may well be 
true, for this court has recognized that Exemption 7(C) 
"covers investigatory files related to enforcement of all kinds 
of laws," including those involving "adjudicative proceedings." 
Rural Housing, 498 F.2d at 81 n.46. Depending on the 
purpose of the investigation, records obtained by OPR re-
garding ethical violations by AUSA Downing of the Attorney 
General's Code of Conduct, see 28 C.F.R. s 77.1-5; 28 U.S.C. 

s 530B, may be investigatory law enforcement files under 
Rural Housing, 498 F.2d at 82. Cf. Griva v. Davidson, 637 
A.2d 830, 846-47 (D.C. 1994); Waldman v. Levine, 544 A.2d 
683, 686 (D.C. 1988). But as the case giving rise to "the 
Glomar response" itself makes clear, the Department cannot 
rely on a bare assertion to justify invocation of an exemption 
from disclosure, see Phillippi v. CIA, 546 F.2d 1009, 1014-15 
& n.12 (D.C. Cir. 1976), especially when, as here, the regula-
tions contemplate that OPR will receive as well as generate 
reports that may constitute investigatory records compiled 
"in connection with government oversight of the performance 
of duties by its employees." Rural Housing, 498 F.2d at 81; 
id. at 82 n.48. Had OPR received reports or allegations 
regarding non-law violations by AUSA Downing, it is entirely 
possible that OPR took no action beyond receipt; on the 
record before the district court, however, the court could not 
determine whether such records exist. Although the Depart-
ment submitted a Vaughn index in response to Jefferson's 
first FOIA request, it did not provide the district court with a 
similar description of all of OPR's files regarding AUSA 
Downing in response to Jefferson's FOIA request of August 
3, 1999. Nor does the record indicate that the district court 
conducted an in-camera inspection of OPR's files regarding 
AUSA Downing. Under the circumstances, OPR failed to 
meet its burden to produce evidence whereby the district 
court would be in a position to make the required threshold 
evidentiary determination. See King, 830 F.2d at 217-18.

 Because Jefferson's August 3, 1999 FOIA request is consid-
erably broader than the FOIA request in Kimberlin, 139 F.3d 
at 947, we agree with amicus that a remand is required. The 
Department's regulations describe OPR as a mixed function 
agency with responsibilities that embrace not only investiga-
tions of violations of law and breaches of professional stan-
dards that may result in civil liability, see, e.g., Griva v. 
Davison, 637 A.2d 830, 846-47 (D.C. 1994); Avianca, Inc. v. 
Corriea, 705 F.Supp. 666, 678-79 (D.D.C. 1989), but breaches 
of internal Department guidelines that may lead to disciplin-
ary proceedings, see Stern v. FBI, 737 F.2d 84, 90 (D.C. Cir. 
1984), as a result of the receipt of reports of investigations by 
other entities of such non-law violations. Hence, a Glomar 

response was inappropriate in the absence of an evidentiary 
record produced by OPR to support a finding that all OPR 
records regarding AUSA Downing are law enforcement rec-
ords. Unlike cases on which the government relies, such as 
Dunkelberger v. FBI, 906 F.2d 779, 780 (D.C. Cir. 1990), 
where the law enforcement purpose of the agency's docu-
ments was conceded, or Kimberlin, 139 F.3d at 947-48, where 
the FOIA request was directed only to OPR's investigation, 
Jefferson's FOIA request seeks all records that OPR may 
have regarding AUSA Downing. His position that not all 
OPR records are necessarily law enforcement records ap-
pears to be supported by the Justice Department's regula-
tions.

 On remand, therefore, the Department, to meet its burden 
to claim exemption from the obligation to disclose the re-
quested records, must provide a Vaughn index, or in-camera 
inspection, or other evidence that would enable the district 
court to determine whether all OPR records relating to 
AUSA Downing are law enforcement records under Exemp-
tion 7(C). If the court finds there are non-law enforcement 
records in OPR, they must be released unless Exemption 2 or 
5 applies; the government's invocation on appeal of Exemp-
tion 6 comes too late. See Maydak v. United States Dep't of 
Justice, 218 F.3d 760, 764 (D.C. Cir. 2000). On the other 
hand, if the district court finds on remand that all of OPR's 
records regarding AUSA Downing are law enforcement rec-
ords, we hold, consistent with the Order of May 14, 2001, that 
Jefferson's challenge to the district court's weighing of the 
public and private interests under Exemption 7(C) fails.

 The district court balanced the privacy interests in the 
manner instructed by, and with a result virtually compelled 
by, Kimberlin, 139 F.3d at 948. Other binding precedent in 
this circuit is to the same effect. See, e.g., Nation Magazine 
v. U.S. Customs Service, 71 F.3d 885, 894 & n.8 (D.C. 1995); 
Beck, 997 F.2d at 1493, 1494; Rural Housing, 498 F.2d at 82. 
Even assuming, as the court did in Kimberlin, 139 F.3d at 
149, "that the balance of interests relating to the disclosure of 
material in an OPR file will not so often tip toward withhold-
ing that a categorical rule against disclosure is appropriate," 
Jefferson fails to show that access to OPR's law enforcement 

files on AUSA Downing "is necessary in order to confirm or 
refute compelling evidence that the agency is engaged in 
illegal activity." Safecard Services, Inc. v. SEC, 926 F.2d 
1197, 1206 (D.C. Cir. 1991). A news clipping submitted by 
Jefferson stating that OPR is inundated with federal prisoner 
complaints and agrees with a judge's criticism of an attorney 
only about half of the time does not, as the district court 
correctly found, suffice to raise a claim of illegal agency 
activity; the clipping reports quantity and does not suggest a 
predilection to ignore such complaints. Nothing in the dis-
trict court's referral of AUSA Downing to OPR for the file 
destruction mandated a finding of agency misconduct.

 Amicus' reliance on Stern v. FBI, 737 F.2d 84 (D.C. Cir. 
1984), is misplaced. Although in Stern the court acknowl-
edged the public interest in knowing that a government 
investigation was comprehensive or that disciplinary mea-
sures were adequate, id. at 92, the court nevertheless de-
clined to release the names of lower level employees, recog-
nizing that, unlike Exemption 6, the balance is not tilted 
emphatically in favor of disclosure under Exemption 7(C). 
Id. at 91-92. In Beck, 997 F.2d at 1493, moreover, the court 
indicated the limits of Stern: not only did Stern involve a 
well-publicized scandal that the FBI had conducted wide-
spread, illegal surveillance of political activists through sur-
reptitious entries and wiretappings and then covered up its 
activities, the disclosure ordered by the court was limited to 
the name of a high-level FBI official who knowingly partici-
pated in the cover-up. Stern, 737 F.2d at 86, 93. AUSA 
Downing is not a high official in the United States Attorney's 
Office, see Kimberlin, 139 F.3d at 949, and the public's 
knowledge of AUSA Downing with regard to his prosecution 
of Jefferson is hardly comparable to the scandal in Stern or 
even to the public's knowledge of the OPR investigation in 
Kimberlin. Yet in Kimberlin, which involved a politically 
charged investigation of a sitting Vice President, the court 
held that the AUSA's privacy interests outweighed the public 
interest in releasing the contents of the OPR investigation of 
the AUSA, notwithstanding the AUSA's own public disclosure 
of the existence of the investigation. Cf. United States Dep't 

of Justice v. Reporters Committee for Freedom of the Press, 
489 U.S. 749, 773-74 (1989).

 Finally, amicus' contention that the district court erred in 
upholding OPR's redactions of the documents that it disclosed 
under Exemption 7(C), because the court had no basis on 
which to determine whether the redacted material was com-
piled for law enforcement purposes, is meritless. Cf. Kimber-
lin, 139 F.3d at 947. The documents that were released by 
OPR "pertain[ed] to a complaint" of illegal activity by Jeffer-
son against AUSA Downing. Jefferson's written complaints 
involved allegations of criminal wrongdoing by AUSA Down-
ing. Jefferson did not challenge the district court's segrega-
bility determination, nor OPR's redactions pursuant to FOIA 
Exemptions 2 and 5. By amicus' own admission, OPR only 
withheld pursuant to Exemption 7(C) the names and identify-
ing information of Justice Department employees and third 
parties, in order to protect their privacy. See Amicus Br. at 
25. Hence, amicus, at most, presents speculative or vague 
assertions that redacted information was improperly with-
held. See Carter, 830 F.2d at 392.

 Accordingly, we remand the case for the district court to 
determine, upon evidence the government shall present, that 
any additional records sought by Jefferson's August 3, 1999, 
FOIA request are law enforcement records properly withheld 
under Exemption 7(C); we otherwise affirm the grant of 
summary judgment.

 Randolph, Circuit Judge, dissenting: I believe all of the 
files of the Office of Professional Responsibility (OPR) in the 
Department of Justice relating to the investigation of an 
individual are "compiled for law enforcement purposes" with-
in the meaning of exemption 7(C) of the Freedom of Informa-
tion Act, 5 U.S.C. s 552(b)(7)(C). OPR therefore properly 
refused to confirm or deny the existence of other investiga-
tions of Assistant United States Attorney Downing.

 Exemption 7(C) shields law enforcement files from disclo-
sure when release of the records would constitute "an unwar-
ranted invasion of personal privacy." 5 U.S.C. s 552(b)(7)(C). 
So-called "Glomar" responses, named after the ship involved 
in Phillippi v. CIA, 546 F.2d 1006 (D.C. Cir. 1976), are 
permissible answers to FOIA requests if the agency's ac-
knowledgment that it has investigatory files about an individ-
ual would constitute an unwarranted invasion of the individu-
al's privacy. If Jefferson sought law enforcement files, our 
decision in Beck v. Dep't of Justice, 997 F.2d 1489 (D.C. Cir. 
1993), justified OPR's Glomar response, a point about which 
we all agree.

 We may also agree that "[i]nternal agency investigations 
... in which an agency, acting as the employer, simply 
supervises its own employees" are not law enforcement inves-
tigations. Stern v. FBI, 737 F.2d 84, 89 (D.C. Cir. 1984). 
But ever since its founding by Attorney General Levi in 1975, 
OPR has lacked general supervisory authority over DOJ 
attorneys. Its task has always been much narrower. OPR is 
a reactive agency within the Justice Department, receiving 
complaints and investigating "allegations of professional mis-
conduct by Department of Justice attorneys that pertain to 
the exercise of their authority to investigate, litigate or 
provide legal advice." Office of Professional Responsibility, 
Fiscal Year 1999 Annual Report 1, http: //www.us-
doj.gov/opr/99AR-Final.htm (last visited Mar. 18, 2002).

 By regulation, OPR is charged with the duty of investigat-
ing the conduct of Justice Department attorneys "that may be 
in violation of law, regulations or orders, or of applicable 
standards of conduct or may constitute mismanagement, 
gross waste of funds, abuse of authority, or a substantial and 
specific danger to public health or safety." 28 C.F.R. 

s 0.39a(a) (2002). Recognizing the potential overlap with the 
investigative authority of the Justice Department's Office of 
the Inspector General, which "conducts and supervises audits, 
inspections and investigations relating to the programs and 
operations of the Department," 28 C.F.R. s 0.29a(a) (2002), 
the Attorney General has circumscribed OPR's authority. 
OPR "shall have jurisdiction to investigate allegations of 
misconduct by Department attorneys that relate to the exer-
cise of their authority to investigate, litigate or provide legal 
advice." Jurisdiction for Investigation of Allegations of Mis-
conduct by Department of Justice Employees, Order No. 
1931-94 (Nov. 8, 1994). The Inspector General has exclusive 
authority to investigate any other allegations.

 When OPR receives a complaint, it conducts a preliminary 
inquiry. 28 C.F.R. s 0.39a(c) (2002). When OPR determines 
that the matter warrants further investigation, OPR refers it 
for investigation:

 (1) If the matter appears to involve a violation of law, to 
 the head of the investigative agency having jurisdiction 
 to investigate such violations;
 
 (2) If the matter appears not to involve a violation of law, 
 to the head of the office, division, bureau or board to 
 which the employee is assigned, or to the head of its 
 internal inspection unit;
 
28 C.F.R. s 0.39a(d)(1) & (2) (2002).

 Two points about the quoted subsections need stressing. 
First, the regulations treat violations of "law" as violations of 
statutory law and violations of regulations, standards of con-
duct and so forth as something else. But for FOIA purposes, 
"law"--as in "compiled for law enforcement purposes"--in-
cludes violations of regulations and standards of conduct and 
court orders and so forth. All of these sources are also law, 
although they are not legislation.* This is why "[i]nvestiga-

__________
 * When a government attorney is found to have engaged in 
intentional misconduct, OPR notifies the state bar association which 
has licensed that attorney. See General Accounting Office, Fol-
low-up Information on the Operations of the Department of 

tions which focus directly on specific alleged illegal acts, 
illegal acts of particular identified officials, acts which could, if 
proved, result in civil or criminal sanctions" are investigations 
for law enforcement purposes within the meaning of exemp-
tion 7(C). Rural Housing Alliance v. United States Dep't of 
Agric., 498 F.2d 73, 81 & n.46 (D.C. Cir. 1974).

 Second, after the employee's office conducts an investiga-
tion of his alleged non-statutory violation pursuant to 
s 0.39a(d)(2), it must file the investigative report with OPR, 
together with a description of the sanction imposed. It is the 
possibility that OPR possesses such a (d)(2) report relating to 
Assistant United States Attorney Downing that leads my 
colleagues to the conclusion that OPR may possess non-law 
enforcement files outside exemption 7(C)'s protection. This 
strikes me as doubly mistaken.

 It wrongly assumes that any (d)(2) investigation by the 
head of the department would be unrelated to a law violation, 
an assumption that rests on a misreading of the regulations. 
And it also wrongly assumes that OPR receives the report for 
other than law enforcement purposes. What other purposes 
might these be? Surely not as an "employer simply supervis-
ing its employees." Maj. op. at 8. To repeat, OPR is not a 
supervising agency within the Justice Department; and it 
does not have general oversight responsibility. Instead OPR 
receives the report of the (d)(2) investigation so that it may 
decide whether to pursue its law enforcement functions fur-
ther. "When warranted, OPR conducts full investigations of 
such allegations, and reports its findings and conclusions to 
the Attorney General and other appropriate Departmental 
officials." http: //www.usdoj.gov/opr/index.html. That OPR 
might close the file at this stage, or earlier, does not mean 
that the records it compiles are for other than law enforce-
ment purposes. Not every complaint will be credible. Not 
every investigation will conclude that the target engaged in 

__________

Justice's Office of Professional Responsibility 2 (2001). The 
ethical rules for lawyers contain enforceable standards and viola-
tions carry civil if not criminal sanctions. Also, attorneys who 
violate court rules can be sanctioned for contempt of court.

misconduct. And as with any agency conducting law enforce-
ment investigations, not every piece of information in OPR's 
file will constitute evidence of illegal activity. In the course 
of investigating someone for committing a crime, the FBI for 
instance might have its agents conduct investigations into the 
individual's friends and associates, his lifestyle, his spending 
habits and so forth. None of these inquiries will necessarily 
reveal criminal activity, but there can be no doubt that the 
records thus compiled are for law enforcement purposes 
within exemption 7(C). For these reasons, I would credit the 
affidavit of the government attorney that "[a]ll records relat-
ing to OPR's investigations are compiled for law enforcement 
purposes and, therefore, are deemed to be law enforcement 
files." Declaration of Dale K. Hall, at 2. My colleagues label 
the sworn statement a "bare assertion," maj. op. at 10, which 
has nothing to do with what should concern us--namely, 
whether it is true. I am convinced that it is. The majority 
offers no good reason for disbelieving it.

 One should not be misled by the majority's statement that 
our court has "decline[d] to hold as a matter of law that all 
OPR records are necessarily law enforcement records." Maj. 
op. at 9. The most to be said of the cases cited for this 
proposition--Kimberlin v. Dep't of Justice, 139 F.3d 944, 947 
(D.C. Cir. 1998), and Beck v. Dep't of Justice, 997 F.2d 1489, 
1492 (D.C. Cir. 1993)--is that the court had no occasion to 
discuss, or to reach, the issue. This is the first case to do so, 
and I believe the result it reaches is mistaken.

 Because OPR conducts law enforcement investigations, and 
has no other function within the Department of Justice, its 
records come within exemption 7(C) and a remand is unwar-
ranted. I therefore dissent.